# United States Court of Appeals
## For the First Circuit

Nos. 03-2223, 03-2573

MIGDALIA RODRIGUEZ-TORRES; JOSE A. MARTINEZ-VEGA;
CONJUGAL PARTNERSHIP RODRIGUEZ-MARTINEZ

Plaintiffs, Appellees/Cross-Appellants,

v.

CARIBBEAN FORMS MANUFACTURER, INC.; RAMALLO BROTHERS
PRINTING, INC.; CARLOS RESTREPO, in his personal capacity
as an executive of Caribbean Forms Manufacturer, Inc.

Defendants, Appellants/Cross-Appellees,

DIRECT MEDIA TECHNOLOGIES; PEDRO J. TORRES, in his
personal capacity

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Howard, Circuit Judges,

and Carter,[*] Senior District Judge.

Camilo K. Salas, III with whom Niles, Salas, Bourque &
Fontana, L.C., John F. Nevares and John F. Nevares and Associates

---

[*]Of the District of Maine, sitting by designation.

P.S.C. were on brief, for appellants.

    Carlos Rodriguez Garcia with whom Rodriguez Garcia PSC was on brief, for appellees.

_____

February 22, 2005

_____

**HOWARD**, **Circuit Judge**.  Migdalia Rodriguez-Torres, her husband, Jose A. Martinez-Vega, and their conjugal partnership filed this suit against Rodriguez's former employers, Ramallo Brothers Printing, Inc. ("Ramallo") and Caribbean Forms Manufacturer, Inc. ("Caribbean Forms"), and her supervisor, Carlos Restrepo, alleging that she was unlawfully terminated from her employment on the basis of age and gender.[1]  The complaint alleged, inter alia, violations of Title VII, 42 U.S.C. § 2000e et seq., Puerto Rico Law 69, 29 P.R. Laws Ann. § 1321 et seq. ("Law 69") and Puerto Rico Law 100, 29 P.R. Laws Ann. § 146 et seq. ("Law 100") (collectively "the Commonwealth claims").[2]

The case proceeded to trial and concluded with a jury verdict finding Ramallo liable under Title VII and Puerto Rico law for terminating Rodriguez's employment on account of gender.  The jury awarded Rodriguez $250,000 in emotional distress damages and $105,000 in backpay.  The jury was not asked to specify whether these awards were for the Title VII or the Commonwealth claims.

---

[1]The parties stipulated that Ramallo and Caribbean Forms were a single employer for purposes of this litigation.  After trial, the district court ruled that Restrepo was not personally liable for damages on the ground that there was no individual liability under either Title VII or Puerto Rico law.  This ruling was not challenged on appeal.  Therefore, we refer to Ramallo as the sole defendant.

[2]Rodriguez brought other claims against Ramallo, but the district court disposed of them at various stages of the proceedings and these rulings are not challenged on appeal.

The jury also awarded Rodriguez $250,000 in punitive damages under Title VII.

Both parties filed post-trial motions. Ramallo moved for judgment as a matter of law or a new trial. It also sought to reduce the Title VII award based on the $200,000 statutory cap on damages and to eliminate the award for the Commonwealth claims because the total exceeded the Title VII cap. Rodriguez requested, inter alia, that the court award front pay and attorney's fees.

The district court declined to enter judgment as a matter of law or order a new trial. Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 286 F. Supp. 2d 209, 213-27 (D.P.R. 2003). Regarding damages, the court recognized that the Title VII compensatory and punitive damages award was capped at $200,000 and enforced the cap by allocating the damages so as to maximize Rodriguez's recovery. Id. at 218 (citing 42 U.S.C. § 1981a(b)(3)(c)). It allocated $249,999 of the emotional distress award to the Commonwealth claims and $1 to the Title VII claim. Id. at 219. It also awarded Rodriguez $199,999 in punitive damages under Title VII. Id. The court then doubled the damage award on the Commonwealth claims as required by Puerto Rico law but declined to award front pay. Id. at 220-21. The court did not award attorney's fees. Thus, the court entered a final judgment in favor of Rodriguez under Title VII for $200,000 in compensatory and punitive damages, $105,000 in

-4-

backpay under Title VII,[3] and for $499,998 in compensatory damages for the Commonwealth claims. The parties have cross-appealed. We affirm in all respects but one.

## I.

We set forth the facts in the light most favorable to the verdict. See Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288, 292 (1st Cir. 1999). Ramallo was a commercial printing company operating in Puerto Rico that produced envelopes, books, encyclopedias, and directories. In addition, Ramallo executed large-scale mailings of shopping circulars and similar printed items on behalf of its clients. Caribbean Forms was a division of Ramallo.

On May 27, 1997, Rodriguez interviewed for a position at Ramallo and was hired, on a temporary basis, for the position of mailing supervisor. After a month, Rodriguez was given a raise and her appointment was extended.

Following a positive evaluation in September 1997, Rodriguez was given another raise and was promoted to be the production manager for the newly established Direct Media Technology Division ("DMT"). DMT was established to improve Ramallo's ability to coordinate large-scale mailings. On August

---

[3]Backpay is not subject to the Title VII cap. See 42 U.S.C. § 1981a(b)(3).

21, 1998, Rodriguez and DMT were transferred from Ramallo to Caribbean Forms.

Immediately after the transfer, Rodriguez continued to report to her previous supervisor at the Ramallo offices. In October 1998, however, Ramallo executives informed Carlos Restrepo, the vice-president of Caribbean Forms, that he should supervise all aspects of DMT. On November 10, 1998, Rodriguez was transferred from the Ramallo payroll to the Caribbean Forms payroll, and her personnel file was shipped from Ramallo to Caribbean Forms. According to Rodriguez, on this date, Restrepo became her supervisor, although she had been working with him since DMT moved to Caribbean Forms.

The day after Restrepo assumed supervisory authority over Rodriguez, he sent her a memorandum questioning whether she possessed the requisite knowledge of postal procedures for her position and criticizing her for not sufficiently communicating with him about the activity in DMT. Later that day, Rodriguez delivered Restrepo a responsive memorandum. After this written exchange, the two met alone in Restrepo's office.

During this meeting, Restrepo and Rodriguez discussed various problems in DMT. As the discussion progressed, tensions escalated. Restrepo told Rodriguez that "women were good for nothing, and that is why he wanted to have male employees." This was not the first time that Restrepo had made such gender-related

comments. A week earlier, he had derogatorily called Rodriguez an "old woman." According to Rodriguez, Restrepo made such comments frequently, and when she told him that such comments were disrespectful, he responded that "men do their work better than women."

Six days after that meeting, Rodriguez began a one-month medical leave of absence because of a back injury. Rodriguez returned from leave on December 16, 1998. Late in the afternoon on that day, Rodriguez met with Carmen Martinez, the Caribbean Forms human resources manager. Martinez told Rodriguez that the company was terminating her employment because it was eliminating her position. Restrepo acknowledged, however, that he ordered Martinez to fire Rodriguez solely because of her poor performance as DMT production manager.

After Rodriguez's termination, Pedro Torres (Rodriguez's assistant) and Restrepo performed Rodriguez's duties. Approximately a year after Rodriguez's termination, Ramallo eliminated DMT because it was not profitable.

## II.

Ramallo challenges the judgment on several grounds. It claims that the district court should have dismissed all of the counts as a matter of law or ordered a new trial, that the court made erroneous and prejudicial evidentiary rulings, and that the court awarded excessive damages.

**A. Judgment as a Matter of Law**

We review <u>de novo</u> the district court's denial of Ramallo's motion for judgment as a matter of law. <u>See</u> <u>Marrero</u> v. <u>Goya of P.R., Inc.</u>, 304 F.3d 7, 14 (1st Cir. 2002). We examine the evidence presented at trial in the light most favorable to Rodriguez. <u>See</u> <u>White</u> v. <u>N.H. Dep't of Corrections</u>, 221 F.3d 254, 259 (1st Cir. 2000). We "may not consider the credibility of witnesses, resolve conflicts in testimony or evaluate the weight of the evidence." <u>Katz</u> v. <u>City Metal Co.</u>, 87 F.3d 26, 28 (1st Cir. 1996). Our review "is weighted toward preservation of the jury verdict, for we must affirm unless the evidence was so strongly and overwhelmingly inconsistent with the verdict[] that no reasonable jury could have returned [it]." <u>Crowley</u> v. <u>L.L. Bean, Inc.</u>, 303 F.3d 387, 393 (1st Cir. 2002) (citation and quotation marks omitted).

**1. Title VII**

Ramallo asserts that it was entitled to judgment on the Title VII count because Rodriguez failed to establish the four <u>McDonnell Douglas</u> elements necessary to make out a prima facie case and thereby shift the burden of production to Ramallo to articulate a non-discriminatory reason for its action. <u>See</u> <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792 (1973). The district court rejected this argument on the ground that Rodriguez had introduced "direct evidence" of discriminatory intent, rendering <u>McDonnell Douglas</u>

-8-

inapplicable.  On appeal, Ramallo says the case was tried under the McDonnell Douglas framework and there was no jury instruction about a direct evidence theory, so the district court could not shift course post trial.  We need not address this contention because we uphold the jury verdict under McDonnell Douglas.  See McMillan v. Mass. Soc. for Prevention of Cruelty of Animals, 140 F.3d 288, 298 n.3 (1st Cir. 1998) (stating that the court of appeals may affirm the district court's ruling on a motion for judgment as a matter of law on any ground manifest in the record).

The district court instructed the jury to evaluate the evidence by applying the McDonnell Douglas burden-shifting framework.  See McDonnell Douglas, 411 U.S. at 802.  Under this framework, the plaintiff must first establish a prima facie case of discrimination.  See id.  Once the plaintiff satisfies the prima facie requirements, the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for its action.  See id.  If the defendant provides such an explanation, the plaintiff must then demonstrate that the defendant's proffered reason was pretext for discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000).  At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her.  See Texas Dep't of Cmty. Affairs v. Burdine,  450 U.S. 248, 253 (1981).

Because employment discrimination cases arise in a variety of contexts, the prima facie elements must be tailored to the given case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). In a wrongful termination case, the plaintiff must show that (1) she was within a protected class, (2) possessed the necessary qualifications and adequately performed her job, (3) but was nevertheless dismissed and (4) her employer sought someone of roughly equivalent qualifications to perform substantially the same work. See Byrd v. Ronayne, 61 F.3d 1026, 1031 (1st Cir. 1995).

Ramallo claims that the proof on this last element was lacking. It argues that, because the evidence showed that after Rodriguez's termination, her duties were performed by current Ramallo employees, Rodriguez failed to establish that her employer sought someone of equivalent qualifications to replace her. In like fashion, the district court instructed the jury that the fourth element of the prima facie case is not satisfied "merely because another employee is assigned to perform plaintiff's duties in addition to his/her own duties." According to the district court, "a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." Rodriguez did not object to these instructions.

Measured against this standard, Rodriguez failed to establish a prima facie case. The evidence did not show that Ramallo hired an outside employee or formally designated one of its

-10-

present employees as Rodriguez's replacement. Rather, Rodriguez demonstrated that Ramallo assigned her duties to two of its current employees without designating a specific replacement. Under the instructions then, there was insufficient evidence to support the verdict.

Ordinarily a jury instruction given without objection becomes the law of the case and establishes the standard by which the sufficiency of the evidence is measured on appeal. See Scott-Harris v. City of Fall River, 134 F.3d 427, 442 & n.16 (1st Cir. 1997), rev'd on other grounds, 523 U.S. 44 (1998). We do, however, recognize a narrow exception for jury instructions that are patently incorrect. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 210 F.3d 1, 8 (1st Cir. 2000). Where the jury was, without doubt, wrongly instructed, we apply the proper legal standard in assessing the evidentiary support for the verdict. See United States v. Zanghi, 189 F.3d 71, 79-80 (1st Cir. 1999).

This exception applies here. We have held several times that a plaintiff need not demonstrate that a new employee was hired or a current employee was formally designated as a replacement in order to satisfy the fourth prong of the prima facie case. We first stated this principle in Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir. 1979). There, in the course of describing replacement as one of the prima facie elements in a wrongful termination case, we cautioned that "[a] replacement need not be sought from outside the

-11-

company . . . nor need he be designated formally as such." <u>Id.</u> at 1013 n.11.

So too in <u>Kale</u> v. <u>Combined Ins. Co. of Am.</u>, 861 F.2d 746, 760 (1st Cir. 1988). Citing <u>Loeb</u>, we held that evidence that "plaintiff's job functions were absorbed by several different employees of defendant" was sufficient to establish the fourth prima facie element. <u>Id.</u> We reaffirmed this principle in <u>Keisling</u> v. <u>Ser-Jobs for Progress, Inc.</u>, 19 F.3d 755, 760 (1st Cir. 1994), on facts similar to <u>Kale</u>.

Applying this authority, the jury should not have been instructed that Rodriguez had to prove that Ramallo hired a new employee or designated a current employee as Rodriguez's replacement in order to satisfy the fourth element of the prima facie case.[4] Rather, to establish the replacement element,

_____

[4]Our opinion in <u>Le Blanc</u> v. <u>Great Am. Ins. Co.</u>, 6 F.3d 836 (1st Cir. 1993) does not suggest otherwise. We stated there that a "discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties, or when the work is redistributed among other existing employees already performing related work." <u>Id.</u> at 846. In <u>Le Blanc</u>, we were addressing an argument completely different from the one made here. The employer in <u>Le Blanc</u> articulated as the non-discriminatory reason for the employee's discharge that the employee was included in a reduction-in-force. <u>Id.</u> The employee argued that this reason was a pretext for discrimination because he was replaced internally and therefore his position was not eliminated. <u>Id.</u> Using the language quoted above, we rejected the employee's argument. We reasoned that having current employees fill the discharged employee's role is consistent with a reduction-in-force rationale while hiring outside replacements suggests that the reduction-in-force rationale was a sham because the position was not in fact eliminated. <u>Id.</u> Thus, in a reduction-in-force case, an employee, trying to prove pretext on the ground that he was replaced, must prove that the

-12-

Rodriguez had to show that Ramallo had a continuing need for the work that she was performing prior to her termination. See Keisling, 19 F.3d at 760. She did not, however, have to show that the replacement was new to the company or specially designated as such. See Loeb, 600 F.2d at 1013 n.11. Measured against this standard, the proof that Restrepo and Torres assumed Rodriguez's tasks, in addition to performing their original duties, was adequate to establish the final element of the prima facie case.[5]

In addition to claiming that Rodriguez failed to establish a prima facie case, Ramallo argues that Rodriguez did not present sufficient evidence to show that her termination was motivated by gender animus. The district court disagreed on the ground that Restrepo's comments provided the jury with a reasonable basis for finding a gender-motivated discharge.

Interpreting the facts in the light most favorable to Rodriguez, Restrepo assumed supervision over Rodriguez on November

---

replacement came from outside the company. This ruling has nothing to do with the issue presented here, namely, the necessary proof for the fourth prong of the prima facie case.

[5]Our discussion here is limited to stating the proper standard for the replacement element of the prima facie case in a wrongful termination action. At the second stage of the McDonnell Douglas framework, an employer may justify a termination as non-discriminatory on the ground that it dismissed the employee because the other existing employees could adequately perform the plaintiff's work. See, e.g., Le Blanc, 6 F.3d at 840. Ramallo, however, has not advanced such an explanation for Rodriguez's termination. Rather, as set forth above, it has claimed only that it terminated Rodriguez because she was a poor performer.

-13-

10, 1998. The next day, Restrepo and Rodriguez met alone to discuss Restrepo's criticisms of her performance. During that meeting, Restrepo said that women "were good for nothing" and that "he wanted to have male employees." Rodriguez worked another week before beginning a leave of absence. She returned on December 16, 1998 and was fired that day based on Restrepo's recommendation.

In addition to the comments just mentioned, in early November 1998, Restrepo derogatorily called Rodriguez an "old woman" and told her that "men do their work better than women." Further, near in time to Rodriguez's termination, Restrepo told Jose Delgado, a United States Postal Service employee who worked with Restrepo and Rodriguez, that he had to "get rid of the women at the company."

Ramallo's articulated reason for Rodriguez's termination was her poor performance as DMT production manager. But based on the foregoing evidence and the fact that Restrepo was the relevant decision-maker, the jury was entitled to disbelieve Ramallo's explanation[6] and to conclude that gender bias motivated the dismissal. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000) (comments by a supervisor questioning whether a woman could work and raise children made within two weeks of the female employee's termination was

_____

[6]Other than Restrepo's testimony, Ramallo introduced no evidence substantiating its claim that Rodriguez was a poor performer.

-14-

sufficient to create a jury question on a gender discrimination claim); Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 588-89 (1st Cir. 1999) (statements by a business owner that "I don't need minorities" and "I don't have to hire . . . Cape Verdean people" was sufficient to establish a viable Title VII claim), abrogated on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 675-76 (1st Cir. 1996) (statement by a person able to influence the decisionmaker that the plaintiff was the only Puerto Rican running a Cuban company was sufficient to create a triable issue of national origin discrimination). Accordingly, we find no basis for disturbing the Title VII verdict.

## 2. Law 69

Ramallo contends that the Law 69 claim should have been dismissed as time barred. The district court rejected this argument on the ground that the limitations period was tolled while Rodriguez's administrative charge was pending with the Equal Employment Opportunity Commission ("EEOC").

Law 69 prohibits employment discrimination on account of gender. 29 P.R. Laws Ann. § 1321. This statute does not contain its own statute of limitations, but the Puerto Rico Supreme Court has held that the one-year limitation period applicable to Law 100, Puerto Rico's general employment discrimination statute, applies to Law 69. See Matos Ortiz v. Commonwealth of P.R., 103 F. Supp. 2d

59, 63 (D.P.R. 2000) (citing Suarez Ruiz v. Figueroa Colon, 145 P.R. Dec. 142 (1998)). Rodriguez was terminated from her employment on December 16, 1998 and filed suit on September 8, 2000, more than a year later. So unless the limitations period was tolled, Rodriguez's claim was untimely.

Puerto Rico law recognizes a special tolling rule for employment discrimination claims brought pursuant to Law 100. Once an administrative charge has been filed with the Department of Labor for the Commonwealth of Puerto Rico and the employer has been notified of the claim, the tolling effect continues during the entire pendency of the administrative proceeding. See 29 P.R. Laws Ann. § 150. The Puerto Rico Supreme Court has extended this rule to include charges filed with the EEOC. See Matos Molero v. Roche Prods., Inc., 132 P.R. Dec. 470 (1993). By filing a charge with the EEOC or the Department of Labor and notifying the employer of the charge, an employee can stop the running of the limitations period until the administrative proceeding has concluded. See Leon-Nogueras v. Univ. of P.R., 964 F. Supp. 585, 588 (D.P.R. 1997). Rodriguez filed her EEOC charge, of which Ramallo had notice, on May 19, 1999, and the EEOC concluded its administrative proceeding on June 19, 2000 by issuing Rodriguez a right to sue letter. Accordingly, if this tolling rule applies, Rodriguez's Law 69 claim would be timely.

Ramallo asserts that the special tolling rule for Law 100 does not apply to Law 69. The Puerto Rico Supreme Court has not addressed this issue, but the local federal district court has said that "it may be safely assumed" that this tolling rule applies to Law 69. Id.

There is good reason for this assumption. Both Law 69 and Law 100 serve the purpose of combating gender discrimination in employment. Indeed, Law 69 is merely an amplification of the principles contained in Law 100. See Matos Ortiz, 103 F. Supp. 2d at 64. It is well established then, that Law 69 is interpreted in pari materia with Law 100. Id. (citing authority). We are therefore confident that the Puerto Rico Supreme Court would borrow the tolling rules from Law 100 for Law 69. See Bogosian v. Woloohojian, 323 F.3d 55, 71 (1st Cir. 2003) (stating that where state law is undecided the federal court, when practicable, must make a fair prediction concerning how the state's highest court would decide if presented with the issue). Because this tolling rule applies, Rodriguez's Law 69 claim was timely filed.

### 3. Law 100

For the Law 100 claim, the district court instructed the jury that the burden of proving that Rodriguez's termination was not discriminatory shifted to Ramallo if Rodriguez proved that she was unjustly fired and was a member of a protected class. Relying on Morales v. Nationwide Ins. Co., 237 F. Supp. 2d 147 (D.P.R.

2002), Ramallo contends that this burden-shifting instruction violated Ramallo's right to due process. We review this claim de novo. See Goodman v. Bowdoin College, 380 F.3d 33, 47 (1st Cir. 2004).

Morales interpreted the Puerto Rico Supreme Court's decision in Díaz Fontánez v. Wyndham Hotel Corp., 2001 TSPR 141 (2001), as imposing an unconstitutional burden-shifting scheme under Law 100. According to Morales, Díaz Fontánez held that, under Law 100, the burden of proof shifted to the employer to prove that the termination was not discriminatory where the employee merely proved that she was fired, was a member of a protected class, and alleged that the termination was unjustified. See 237 F. Supp. 2d at 153-54. Relying on a series of United States Supreme Court decisions holding that an evidentiary presumption violates due process unless there is a rational connection between the facts required to activate the presumption and the ultimate fact to be proved, the Morales court ruled that merely proving a termination and membership in a protected class has no rational connection to the ultimate issue of the existence of discriminatory animus. Id. at 156-60. Accordingly, Law 100, as interpreted by Díaz Fontánez, violated due process. Id. at 162.

We need not decide whether Morales correctly interpreted Díaz Fontánez[7] or whether Morales' constitutional analysis was correct. The district court did not instruct the jury in the manner criticized by Morales. Instead, the court instructed that for the burden of proof to shift to Ramallo, Rodriguez had to prove the she was in a protected class, that she was fired, and that the termination was unjustified. As Morales effectively concedes, see 237 F. Supp. 2d at 159, proof that a plaintiff was unjustly fired and that she belonged to a protected class is sufficient to establish a rational connection between these facts and the ultimate issue of whether the dismissal was unlawfully motivated. See Alvarez-Fonseca v. Pepsi Cola of P.R., 152 F.3d 17, 27-28 (1st Cir. 1998) (holding that the burden of proof shifts to the employer under Law 100 after the employee proves an unjust termination). We therefore conclude that there was no error in the district court's Law 100 instruction.

## B. Evidentiary and Mistrial Rulings

Evidentiary rulings and denials of motions for a mistrial are reviewed for abuse of discretion. See Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 855 (1st Cir. 1998) (evidentiary

---

[7]After Morales, other decisions from the United States District Court in Puerto Rico have read Díaz Fontánez more narrowly, thus avoiding the constitutional issue. See Velez-Sotamayor v. Progreso Cash & Carry, Inc., 279 F. Supp. 2d 65, 79-82 (D.P.R. 2003); Varlea Teron v. Banco Santander de P.R., 257 F. Supp. 2d 454, 465-66 (D.P.R. 2003).

-19-

rulings); <u>United States</u> v. <u>De Jesus Mateo</u>, 373 F.3d 70, 72 (1st Cir. 2004)(mistrial rulings).

## 1. Evidence of Prior Work Performance

At trial, Rodriguez introduced evidence that she had been trained concerning United States Postal Service procedures by her prior employers. She also introduced positive performance evaluations and proof of raises that she received at Ramallo before coming under Restrepo's supervision. Ramallo objected to this evidence as irrelevant. The district court overruled the objection on the ground that the evidence tended to show that Rodriguez was qualified and performing up to Ramallo's expectations.

As mentioned above, for Rodriguez to establish a prima facie case, she had to demonstrate that she possessed the necessary qualifications and adequately performed her job. <u>See</u> <u>supra</u> at 10. An employee may meet this burden through proof of positive performance evaluations and raises earned from the employer. <u>See</u> <u>Woodman</u> v. <u>Haemonetics Corp.</u>, 51 F.3d 1087, 1092 (1st Cir. 1995); <u>Woods</u> v. <u>Friction Materials, Inc.</u>, 30 F.3d 255, 261 (1st Cir. 1994); <u>Keisling</u>, 19 F.3d at 760. Further, because of Ramallo's claim that Rodriguez lacked certain relevant knowledge to do her job, the district court acted within its discretion in admitting as

relevant that Rodriguez obtained this knowledge from prior employment.[8]

### 2. Leave Testimony

Ramallo's second evidentiary challenge concerns the district court's refusal to grant a mistrial after it struck Rodriguez's testimony explaining her reason for taking medical leave a month before her termination. Rodriguez testified at trial that she took leave because of a back injury from pushing heavy carts at work after Restrepo refused to assign an employee to assist her. At her deposition, however, Rodriguez testified that she took leave because of a back injury that she suffered as a result of an automobile accident. While the court declined to find that Rodriguez intentionally lied at trial and denied Ramallo's motion for a mistrial, it granted Ramallo's motion to strike this testimony because it wanted to avoid the possibility of a "trial by ambush."

A mistrial is a last resort that is ordered only if the demonstrated harm cannot be cured by less drastic means. <u>See</u>

---

[8]Ramallo's reliance on <u>Rodriguez-Cuervos</u> v. <u>Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 20 (1st Cir. 1999), is misplaced. We held in <u>Rodriguez-Cuervos</u> that evidence of a prior supervisor's exemplary evaluation was irrelevant to establishing pretext for discrimination. <u>See</u> <u>id.</u> We reasoned that, because different supervisors for the same employer may have different expectations, favorable reviews from another supervisor do not support a finding of pretext. <u>See</u> <u>id.</u> We did not rule, as Ramallo suggests, that prior work performance was irrelevant for all purposes in an employment discrimination case.

United States v. Rullan-Rivera, 60 F.3d 16, 18 (1st Cir. 1995). Providing the jury with timely and appropriate curative instructions to ignore the offending testimony is a common way to obviate the need for ordering a mistrial. See United States v. Sepúlveda, 15 F.3d 1161, 1184 (1st Cir. 1993). Curative instructions are sufficient for this purpose unless the offending testimony could not have been reasonably ignored by the jury despite the instructions. See De Jesus Mateo, 373 F.3d at 73.

Here, the district court provided the jury with instructions to disregard Rodriguez's testimony just after she provided it. Moreover, the stricken testimony was brief and not particularly clear. In these circumstances, the prejudice to Ramallo was minimal, and the district court's timely instruction cured any lingering unfairness.

**C. Damages**

### 1. Compensatory Damages

Ramallo argues on appeal that the jury awarded Rodriguez excessive emotional distress damages in the amount of $250,000. It contends that this award was excessive because it was based solely on Rodriguez's own testimony, unsupported by expert medical evidence.

Where, as here, the defendant failed to challenge a damage award in the district court, our review is limited to plain error. See Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 102 (1st

-22-

Cir. 2003).  Thus, Ramallo can only prevail on its claim by showing that permitting an award of this size to stand was a clear and obvious error that affected Ramallo's substantial rights and undermined the fairness, integrity, or public reputation of the judicial proceedings.  See Smith v. Kmart Corp., 177 F.3d 19, 28 (1st Cir. 1999).

Citing Sanchez v. P.R. Oil Co., 37 F.3d 712 (1st Cir. 1994), Ramallo contends that Rodriguez's failure to introduce expert testimony supporting her emotional distress claim requires that her award be reduced or eliminated.  In Sanchez, we observed that a district court could account for the plaintiff's failure to introduce "psychological and psychiatric evidence" in reducing an emotional distress award.  Id. at 724 n.13.  We did not, however, hold that expert medical testimony was a prerequisite for an emotional distress award.  Indeed, we noted that expert evidence was not required.  See id. at 724; see also Koster v. Trans World Airlines, Inc., 181 F.3d 24, 35 (1st Cir. 1999) ("[T]estimony from a mental health expert is not required to sustain an award for emotional distress.").

Rodriguez testified that, after the termination, her personal life changed "drastically."  She experienced financial difficulties, her marriage suffered, she entered a deep depression which lasted "for quite some time," and, because of the depression, she had difficulty finding subsequent employment.

This testimony is similar to the plaintiff's emotional distress testimony in <u>Koster</u>, which we held to be sufficient to support a $250,000 award. In <u>Koster</u>, the plaintiff testified that, because of his termination, he had trouble sleeping, he was anxious, and his family life suffered.[9] <u>Koster</u>, 181 F.3d at 35-36. There was no evidence that he ever sought medical treatment or suffered long-term depression. <u>Id.</u> at 36. Rodriguez's damages are certainly on the high side of permissible awards. But given <u>Koster</u> and the "the esoteric nature of damages for emotional distress," we cannot say that a $250,000 award was so excessive that permitting it to stand constituted plain error. <u>Id.</u>

**2. Punitive Damages**

Although the issue was not raised below, Ramallo urges us to reverse the punitive damages award for a lack of evidence. We review for plain error. <u>See</u> <u>Chestnut</u> v. <u>City of Lowell</u>, 305 F.3d 18, 20 (1st Cir. 2002).

Title VII authorizes punitive damages when a plaintiff demonstrates that the defendant engaged in intentional discrimination "with malice or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981(a)(b)(1). The Supreme Court has provided a three-part

---

[9]<u>Koster</u> involved an emotional distress award under Mass. Gen. L. ch. 151B. Subsequently, we have relied on <u>Koster</u> in evaluating the size of emotional distress awards under Title VII. <u>See</u> <u>O'Rourke</u> v. <u>City of Providence</u>, 235 F.3d 713, 734 (1st Cir. 2001).

framework for determining whether a punitive damage award is proper under the statutory standard.  See Kolstad v. Am. Dental Assoc., 527 U.S. 526 (1999).

To qualify for punitive damages, a plaintiff must first demonstrate that the employer acted with malicious or reckless indifference to the plaintiff's federally protected rights.  See id. at 535-36.  Once a plaintiff has adduced such proof, she then must establish a basis for imputing liability to the employer.[10] See id. at 539.  But even if the plaintiff makes these showings, the employer still may avoid punitive liability by showing that it engaged in good faith efforts to implement an anti-discrimination policy.  See id. at 545.   An employer's good faith effort to comply with Title VII demonstrates that the employer itself did not act with the culpable mental state, thus making it inappropriate to punish the employer for the manager's conduct.  See id. at 544-45. Demonstrating good faith compliance is an affirmative defense, and the burden of proof therefore rests with the employer.  See Romano v. U-Haul Int'l, 233 F.3d 655, 670 (1st Cir. 2000).

Applying the Kolstad framework and the plain error standard, we conclude that there was sufficient evidence to permit a punitive damages award.  Restrepo testified that he was aware of signs posted throughout the Ramallo facility that "talked about the

---

[10]The plaintiff may meet this burden by showing that the employee who discriminated against her was a managerial agent acting within the scope of his employment.  See id. at 543.

discrimination and the laws and the rights that the employees have." From this admission, a reasonable jury could conclude that Restrepo, one of Ramallo's managerial agents, understood that firing an employee on account of gender violated federal law. See DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 38 (1st Cir. 2001) (stating that "the extent of federal statutory and constitutional law preventing discrimination . . . suggests that defendants had to know that such discrimination was illegal").

Moreover, Ramallo introduced little evidence supporting its compliance defense. In addition to the posted signs, Ramallo showed that its job application contained a non-discrimination statement. But there was also evidence that the Caribbean Forms employee manual did not contain a non-discrimination policy, Caribbean Forms did not provide its employees with anti-discrimination training, and Caribbean Form's complaint procedure was limited to sexual harassment claims. In light of Restrepo's admission and Ramallo's anemic showing of Title VII compliance, we have no trouble concluding that permitting a punitive award in these circumstances was not plain error.[11] See Romano, 233 F.3d at

[11]Additionally, Ramallo argues that the $199,999 punitive award was so large that it violated due process under State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003), and BMW v. Gore, 517 U.S. 559 (1996). Again, this claim was not raised below and is therefore reviewed only for plain error. See Rivera-Torres, 341 F.3d at 103. In another employment discrimination case, we noted that "a punitive damages award that comports with a statutory cap provides strong evidence that a defendant's due process rights have not been violated." Romano, 233 F.3d at 673. This is so because

-26-

670 (stating that evidence that the company adopted and distributed an anti-discrimination policy was not sufficiently compelling to require that the jury reject awarding punitive damages).

### 3. Allocation of the Damages

As discussed above, see supra at 4, the jury awarded Rodriguez $250,000 in compensatory damages without apportioning the award between the Commonwealth and Title VII claims. The jury also awarded $250,000 in punitive damages under Title VII. Rodriguez's eligibility for Title VII compensatory and punitive damages was capped at $200,000, but no similar cap applied to the Commonwealth claims. See 42 U.S.C. § 1981a(b)(3)(c). To comply with the Title VII cap, the district court allocated $1 in compensatory damages and $199,999 in punitive damages to the Title VII claim.[12] It applied the remainder of the compensatory award ($249,999) to the Commonwealth claims. Ramallo assigns error to this allocation on

---

a court deciding whether a punitive award violates due process must accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue. BMW, 517 U.S. at 583. Here, the punitive award, after being reduced by the district court, was within the Title VII statutory cap and thus was within the range that Congress thought appropriate to punish and deter malicious or reckless Title VII violations. We cannot say that the punitive award so clearly violated due process as to constitute plain error.

[12]In this circuit, punitive damages may not be awarded under Title VII without the award of at least nominal compensatory damages. See Kerr Selgas v. Am. Airlines, Inc., 69 F.3d 1205, 1214-15 (1st Cir. 1995).

-27-

the ground that the Title VII cap required the district court to further limit Rodriguez's award.

Several appeals courts have addressed the problem of allocating damages where the jury provides one damage award for parallel state and federal discrimination claims but the award exceeds the applicable federal cap. All have approved the method employed by the district court here, namely, considering the unspecified award as fungible between the state and federal claims and allocating the award so as to maximize the plaintiff's recovery while adhering to the Title VII cap. See Hall v. Consol. Freightways Corp., 337 F.3d 669, 678-79 (6th Cir. 2003); Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 570-71 (3d Cir. 2002); Passantino v. Johnson & Johnson, 212 F.3d 493, 509-10 (9th Cir. 2000); Martini v. Fed. Nat'l Mortgage Ass'n, 178 F.3d 1336, 1349-50 (D.C. Cir. 1999); Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 576 (8th Cir. 1997).

Courts have settled on this method for two primary reasons. First, where the jury makes an unapportioned award, there is no basis for believing that the jury favored applying the damages to the federal over the state claim. Indeed, the most plausible reading of the jury's verdict in such circumstances is that the jury wanted the specified sum awarded to the plaintiff no matter the count to which the award was eventually assigned. Allocating damages in this fashion is thus consistent with the

-28-

district court's general obligation to preserve lawful jury awards to the extent possible. See Gagliardo, 311 F.3d at 571; Passantino, 212 F.3d at 510. Second, allocating the excess damages to the state law claim respects "the local jurisdiction's prerogative to provide greater remedies for employment discrimination than those Congress has afforded under Title VII." Martini, 178 F.3d at 1349-50; see also 42 U.S.C. § 2000e-7 ("Nothing in [Title VII] shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State.").

Here, the federal and Commonwealth statutes provide for liability if Ramallo terminated Rodriguez on account of gender. They also permit an award of emotional distress damages. Given the similarity of the claims and the jury's unapportioned award of emotional distress damages, there is no basis to believe that the jury favored the federal over the Commonwealth claims. It was therefore proper for the district court to allocate the compensatory portion of Rodriguez's award to the Commonwealth claims so as to preserve as much of the verdict as possible given the Title VII cap.[13]

---

[13]If Ramallo thought that the jury might have awarded different compensatory awards for the Title VII and Commonwealth claims, it could have asked that the jury specify an individual compensatory award for each count. It did not do so.

### 4. Double Damages

Puerto Rico Laws 69 and 100 provide a victorious plaintiff with double damages. 29 P.R. Laws Ann. § 146(a)(1); 29 P.R. Laws Ann. § 1341(a)(1). The doubling of the award is mandatory. See Campos-Orrego v. Rivera, 175 F.3d 89, 96 (1st Cir. 2001). In accord with Puerto Rico law, the district court doubled Rodriguez's damages for the Commonwealth claims, awarding her $499,998. Ramallo argues that the award is duplicative of the punitive award under Title VII because the doubling provision is punitive and it is already being punished by the federal punitive damages award.[14] As this claim presents a question of law, our review is de novo. See Sanchez, 37 F.3d at 725.

As just explained, Ramallo's claim presupposes that the double damages available under Puerto Rico law are punitive in nature. Contrary to Ramallo's assumption, this is not at all clear. Indeed, we have explained that the double damage provision is most likely compensatory:

> [T]he Puerto Rico Supreme Court, in interpreting the damages provisions of Law 100, has stated that the legislature's "intent was to devise a formula to redress damages arising from discrimination in employment." Garcia Pagan v. Shiley Caribbean, 122 D.P.R. 193 (1988). This language fits

---

[14]Ramallo also suggests that that double damage award offends due process. Because it has not explained the basis for this argument, we deem it waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

> far more comfortably with an aim to
> compensate rather than to punish or
> deter.

Id. To the extent that double damages are compensatory, they are not meant to punish and thus serve entirely different ends than punitive damages under Title VII. Therefore, if compensatory, the award of double damages under Puerto Rico law is not duplicative of the Title VII punitive damages award. See id. (holding that double damages under Law 100 and punitive liquidated damages under the AREA are not duplicative).

Moreover, even assuming that double damages are punitive, it would not benefit Ramallo. In Sanchez, we held that, apart from constitutional and statutory construction considerations, "there is no legal concept of duplicative awards that functions as a limitation on exemplary damages." Id. at 725. Sanchez controls here, given Ramallo's failure to develop an argument to the contrary.

### III.

On her cross-appeal, Rodriguez raises two issues. She claims that the district court abused its discretion by not granting her front pay and that the district court erred by not granting her attorney's fees.

**A. Front Pay**

Awards of front pay are generally entrusted to the district court's discretion and are available only where

-31-

reinstatement is impracticable or impossible.  See Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 380 (1st Cir. 2004).  The district court ruled that ordering Rodriguez's reinstatement would be impossible but nevertheless declined to order front pay on the ground that Rodriguez failed to demonstrate that she sought comparable employment after her termination.

One recognized reason for denying front pay is the plaintiff's failure to mitigate damages by seeking comparable employment.  See, e.g., Giles v. Gen. Elec. Co., 245 F.3d 474, 489 (5th Cir. 2001); Glenway v. Buffalo Hilton Hotel, 143 F.3d 47, 55 (2d Cir. 1998); see also C. Geoffrey Warwick, Employment Discrimination Law, 1249 n.106 (2000 supp.).  This is so because a court cannot assess the plaintiff's likely future damages without information on whether the plaintiff would have mitigated those damages by obtaining alternative employment.  Rodriguez testified that she applied for a few jobs after her termination but that these applications did not lead to any opportunities.  Rodriguez's testimony on this point was, at best, sketchy.  In light of this weak testimony and the absence of any other supporting evidence, the district court acted within its discretion by denying Rodriguez front pay as overly speculative.[15]

_____

[15]There were other reasons that may have made an award of front pay inappropriate in this case.  Rodriguez's division was closed a year after her termination which made her long-term employment prospects at Ramallo doubtful.  Moreover, Rodriguez received a large punitive and double damages award.  Such awards can render

**B. Attorney's Fees**

Finally, we address Rodriguez's claim that the district court erred by not awarding attorney's fees. It appears from the docket that Rodriguez filed a "Verified Statement in Support of Attorney's Fees" on September 18, 2003, but that the district court never ruled on this request.[16] Ramallo argues that we should deny this request because Rodriguez did not style her filing as a "motion" for attorney's fees. This argument is not so obviously meritorious that we should rule on it in the first instance. "The battle over attorney's fees is [largely] determined in the trial court." See Phetosomphone v. Allison Reed Group Inc., 984 F.2d 4, 6 (1st Cir. 1993). This case presents no exception.

**IV.**

For the reasons stated, the judgment is **<u>affirmed</u>**. The case is **<u>remanded</u>** to the district court for consideration of Rodriguez's request for attorney's fees.

**<u>So ordered</u>**.

---

front pay unnecessary. See Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985).

[16]The district court's only relevant ruling was an order denying, as untimely, Rodriguez's request to file a reply memorandum in response to Ramallo's opposition to the attorney's fees request.