# United States Court of Appeals

## For the First Circuit

No. 10-1639

EDNA M. HERNÁNDEZ-MIRANDA,

Plaintiff, Appellant,

v.

EMPRESAS DÍAZ MASSÓ, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Siler,* Circuit Judges.

Francisco M. López-Romo for appellant.
Anne Noel Occhialino, Attorney, with whom P. David Lopez,
General Counsel, Carolyn L. Wheeler, Acting Associate General
Counsel, and Lorraine C. Davis, Assistant General Counsel, were on
brief, for the Equal Employment Opportunity Commission, amicus
curiae.
Miguel Simonet Sierra for appellee.

June 29, 2011

---

* Of the Sixth Circuit, sitting by designation.

**LYNCH**, **Chief Judge**.    This appeal raises questions of first impression for this circuit as to the proper interpretation of the caps on compensatory and punitive damages under 42 U.S.C. § 1981a(b)(3) in a Title VII employment discrimination action.

The Civil Rights Act of 1991, Pub. L. No. 102-166, authorized the recovery of previously unavailable types of damages in Title VII actions involving intentional discrimination.  Pub. L. No. 102-166, § 102; 42 U.S.C. § 1981a(a)(1), (b).  These additional types of damages, which can be awarded by verdict once a violation of Title VII has been established, were made available subject to the proviso that they be capped.  The caps range from $50,000 to $300,000, and turn on how many employees a defendant "has . . . in each of 20 or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 1981a(b)(3).  The question presented on appeal is whether the "current" calendar year refers to the calendar year(s) in which the discrimination occurred or the calendar year in which the damage award is made.

A jury awarded the plaintiff, Edna Hernández-Miranda, $300,000 in damages in this Title VII suit alleging intentional discrimination by her former employer, Empresas Díaz Massó (DM). Hernández-Miranda testified that during her employment as a construction worker, she was forced to perform oral sex on a supervisor multiple times and was subjected to extreme, continuing sexual abuse by coworkers and supervisors.  She testified that her

job with DM was her sole means to support herself and her children, and that as a result of the mistreatment she sought psychiatric help. Hernández-Miranda testified as well that DM ignored her repeated complaints of sexual harassment.

The district court reduced the jury award to $50,000 under § 1981a(b)(3)(A), using the year of the award to measure the number of DM's employees and thereby determine the size of the applicable statutory cap. Miranda v. Empresas Díaz Massó, Inc., 699 F. Supp. 2d 413, 438 (D.P.R. 2010). Hernández-Miranda appeals this reduction with amicus support from the Equal Employment Opportunity Commission (EEOC), and we reverse. We interpret the statutory phrase "current" calendar year in § 1981a(b)(3) to refer to the time period of the discrimination. Because DM has not shown that it had less than 200 employees during the years of discrimination, we hold that the statutory cap in § 1981a(b)(3)(C) applies. We remand with instructions to vacate the judgment of $50,000 and to enter a compensatory damages award of $200,000.

I.

Based on more than adequate evidence, the ugly details of which we do not describe further, the jury issued its award of $300,000 on August 18, 2008, "to compensate for past, present and future emotional pain and mental anguish caused by [DM's] conduct, actions, or omissions." Hernández-Miranda worked for DM, first as a laborer and then as a Safety Officer at labor sites, from August

-3-

2003 until her termination in March 2005. The evidence at trial established that the clearest incidents of harassment, discrimination, and abuse occurred in 2004.

DM filed several motions after the jury's verdict, including an August 26, 2008 motion under Rule 59(e) to reduce the verdict based on § 1981a(b)(3). This motion asserted that the current calendar year, for purposes of the damage cap provision, is the calendar year of judgment. DM accompanied the motion with an affidavit signed by its vice-president, which stated that in 2007 DM employed 98 employees and in 2008, the year of the award, DM employed only 25 employees. The affidavit made clear that DM's workforce had shrunk since the period of discrimination, from 241 employees in 2003 and 247 employees in 2004.

Hernández-Miranda filed a garbled opposition to the motion to reduce the award. She argued that DM had failed to offer evidence at trial concerning how many employees it had, and that the court had prevented her from doing so. Hernández-Miranda further asserted that DM had recently merged with another company and that the resulting company had 1,300 employees. She also noted that there had been testimony at trial that DM at one time had 250 to 300 employers. Hernández-Miranda did not address which of these numbers should guide the damage cap analysis.[1]

---

[1] Hernández-Miranda does raise this issue of statutory interpretation on appeal, and we exercise our discretion to excuse any waiver. See Powell v. Alexander, 391 F.3d 1, 21 n.24 (1st Cir.

-4-

Without discussion, the district court assumed the relevant time period for determining the damage cap was the time of the entry of the verdict and reduced the award to $50,000. Miranda, 699 F. Supp. 2d at 437-38.

II.

We review a district court's ruling on a motion to alter or amend the judgment for abuse of discretion, Negrón-Almeda v. Santiago, 528 F.3d 15, 25 (1st Cir. 2008), reviewing questions of law de novo and questions of fact for clear error, Ungar v. Palestine Liberation Org., 599 F.3d 79, 83 (1st Cir. 2010). Questions of statutory interpretation are questions of law and are reviewed de novo. United States v. Troy, 618 F.3d 27, 35 (1st Cir. 2010).

Before the Civil Rights Act of 1991, successful Title VII litigants could receive damages for back pay, limited to the pay for the two years prior to the filing of a charge of discrimination. 42 U.S.C. § 2000e-5(g)(1). The 1991 Act newly made punitive damages available under the statute, as well as additional forms of compensatory damages: non-pecuniary damages and future pecuniary damages. Id. § 1981a(a)(1) & (b). These new remedies were made available to Title VII litigants who proved intentional discrimination, but not Title VII litigants who proved

2004). We do so "in the interests of justice." Thomas v. Arn, 474 U.S. 140, 155 & n.15 (1985).

that an employment practice was unlawful only because of its disparate impact.  Id. § 1981a(a)(1).  The remedies were made available subject to statutory damage caps.[2]

Neither the Supreme Court nor this court has addressed the meaning of "current" calendar year under § 1981a(b)(3).  We are only aware of three circuits that have done so.  The Fourth and Fifth Circuits, and, by implication, the Seventh Circuit have concluded that the "current" calendar year under § 1981a(b)(3) is the year of discrimination.  Depaoli v. Vacation Sales Assocs., LLC, 489 F.3d 615, 622 (4th Cir. 2007); Vance v. Union Planters Corp., 209 F.3d 438, 446 (5th Cir. 2000); Hennessey v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1354-55 (7th Cir. 1995).

In so holding, the Fourth and Fifth Circuits relied in part on language in 42 U.S.C. § 2000e(b).  That provision limits the definition of "employer" under Title VII to a person with fifteen or more employees "in each of twenty or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 2000e(b).  The two courts held that the current year under § 2000e(b) is the year of the discrimination, and that consistent usage dictates that the current year under § 1981a(b)(3) also be the year of the

---

[2]    To be clear, the caps do not apply to the damages previously available under Title VII.  See 42 U.S.C. § 1981a(b)(2).  Nor do they apply to awards pursuant to state law claims.  Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 65 (1st Cir. 2005).

-6-

discrimination.  See Depaoli, 489 F.3d at 622; Vance, 209 F.3d at 446.

The Supreme Court has implicitly reached the same conclusion about the meaning of "current" calendar year under § 2000e(b).  In Walters v. Metropolitan Educational Enterprises, Inc., 519 U.S. 202 (1997), the Court applied that provision such that the "current" calendar year is the year of the discrimination. Walters, 519 U.S. at 205 & n.*.  This court interpreted § 2000e(b) in this fashion in Vera-Lozano v. International Broadcasting, 50 F.3d 67 (1st Cir. 1995).  There, we held that "the 'current year' . . . as defined by the statute" under § 2000e(b) was the year of the discrimination.  Id. at 69 (citing Dumas v. Town of Mount Vernon, Ala., 612 F.3d 974, 979 n.4 (5th Cir. 1980)).

## III.

Under settled principles of statutory construction, we first look to whether the statutory text is plain and unambiguous. Carcieri v. Salazar, 129 S. Ct. 1058, 1063 (2009).  If it is, "we must apply the statute according to its terms."  Id. at 1063-64. In conducting this analysis, we begin with the ordinary meaning of the terms as of the time when the statutory provision was enacted. See id. at 1064.  To determine ordinary meaning, we may consult dictionary definitions, interpretations given to the same terms by judicial construction, and the statutory context in which the words are used.  See id.

The language of § 1981a(b)(3) provides:

> The sum of the amount of compensatory damages awarded under this section . . . and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).

The sparse legislative history of the 1991 amendments reflect that this provision arose from a political compromise between those who wanted to broaden the availability of damages under Title VII[3] and the Americans with Disabilities Act and those concerned that an expansion of remedies under these statutes might

---

[3] The expansion of Title VII remedies also equalized the remedies available to Title VII gender discrimination plaintiffs with those that had previously been available under § 1981 to racial discrimination plaintiffs. Compare 42 U.S.C. § 2000e-5(g) with 42 U.S.C. § 1981; see also Bryan Hart, Comment, Burden of Proof for Employee Numerosity under § 1981a Statutory Damage Caps, 75 U. Chi. L. Rev. 1657, 1661 (2008).

-8-

result in frivolous litigation and awards that posed economic perils to businesses. This compromise is made clear by the two primary interpretive memoranda discussing the Act. See 137 Cong. Rec. S15,472-78 (daily ed. Oct. 30, 1991) (statement of Sen. Robert Dole); id. at 15,483-85 (statement of Sen. John Danforth). The legislative history does not speak directly to how the phrase "current or preceding calendar year" should be interpreted, however.

DM argues that the text is plain and that the term "current" means "presently elapsing" or "occurring in or existing in the present time." Merriam-Webster's Collegiate Dictionary 306 (11th ed. 2003); see also Carcieri, 129 S. Ct. at 1064 (interpreting the term "now" in the Indian Reorganization Act). DM argues that since the caps cannot be applied until there has been a verdict award, the "current" calendar year must mean the year of the award. It also argues that this reading gives effect to a congressional intent to spare small employers from large awards, as employers that shrunk in size would be protected from awards capped on the basis of their size at an earlier date.

Though DM's plain meaning argument is far from frivolous, we reject it for several reasons. In our view, these dictionary definitions cannot resolve the issue on appeal. The issue turns on from what point in time one should read the term "current," not on the abstract meaning of that term. On its face, the damage caps

-9-

provision does not resolve this question; in our view, it can be reasonably construed in different ways. To best effectuate congressional intent, we look both to the context of the larger statutory scheme and to how the phrase "current or preceding calendar year" had been defined elsewhere in the statutory scheme at the time Congress enacted the 1991 amendments to Title VII.

A.        The Statutory Scheme

The damages cap applies to the sum of punitive damages and compensatory damages made available by the 1991 Act. See Hogan v. Bangor & Aroostook R.R. Co., 61 F.3d 1034, 1037 (1st Cir. 1995). The caps apply individually to each party, see 42 U.S.C. § 1981a(b)(3), and are for the court, not the jury, to apply, see id. § 1981a(c)(2). The statute forbids the court from informing the jury of the limitations on recovery. Id. § 1981a(c)(2). From the legislative history, it is clear that juries are not advised of the cap to ensure that "no pressure, upward or downward, will be exerted on the amount of jury awards by the existence of the statutory limitations." 137 Cong. Rec. S15,484 (daily ed. Oct. 30, 1991) (statement of Sen. John Danforth). Of necessity, the caps come into play only after there has been a verdict award.[4]

---

[4]      Nonetheless, it is not uncommon for evidence as to the employer's size to be introduced at trial, as was true in part here. See, e.g., Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1354 (7th Cir. 1995).

-10-

It is clear that Congress did intend to protect employers, especially smaller employers, from ruinously large awards, and that the size of the employer was used as a rough measure for the degree of protection needed. Congress designed remedies under Title VII to be somewhat proportionate to ability to pay. The number of employees a company has serves as a proxy for this ability. Smaller employers face smaller penalties; larger employers face larger penalties. This general principle, however, does not dispose of the issue in this case. Congress, we believe, intended such protection for those who were small employers at the time of the discrimination, and not those who by happenstance or design became smaller employers between the time of discrimination and the time of the verdict.

This construction best serves Title VII's purpose of encouraging resolution of disputes before litigation commences. This purpose is one reason for the requirement of an EEOC filing prior to the filing of a lawsuit, see Local No. 93, Int'l Assoc. of Firefighters, AFL-CIO C.L.C., v. City of Cleveland, 478 U.S. 501, 517-18 (1986), and is best advanced by providing clarity and certainty as to the size of potential damage awards from the outset of a dispute. The new types of damages made available in the 1991 Act are inherently more difficult to value precisely than the back pay damages traditionally available under Title VII, rendering this

type of clarity and certainty all the more important in allowing litigants to make informed decisions about settlement.

Clarity and certainty of potential liability also allows for both sides to set realistic litigation budgets and evaluate whether cases are worth bringing and defending. Such clarity and certainty allows businesses to set adequate reserves, disclose those reserves in annual reports as necessary, and make assessments about whether and how much to insure against the risk of litigation.[5] It also provides appropriate incentives to employers to take measures for affirmative defenses under <u>Faragher</u> v. <u>City of Boca Raton</u>, 524 U.S. 775 (1998), and <u>Burlington Industries, Inc.</u> v. <u>Ellerth</u>, 524 U.S. 742 (1998), should a dispute arise.

We stress clarity and certainty because only one of the offered interpretations provides them. There is no early clarity or certainty under DM's reading. When cases get scheduled for trial is up to the court system, and delay will vary with case load. Interpreting the "current" calendar year as the years of discrimination, by contrast, provides clarity and certainty even before the lawsuit is filed, and serves the purpose of the 1991 Act of providing compensatory, but not excessive, awards. In addition, as the <u>Vance</u> court sagely recognized, using the year of discrimination prevents employers from "engag[ing] in gamesmanship

---

[5]    Or at least to insure against the risk of compensatory damages, as most insurers will not indemnify punitive damages.

by structuring companies, or timing the progress of lawsuits, to maximize gain or to minimize loss." Vance, 209 F.3d at 446.

B.        Preexisting Judicial Constructions

This construction of the statute is supported by pre-1991 judicial constructions of § 2000e(b), the Title VII provision that also employs the phrase "current or preceding calendar year." Like the Fourth and Fifth Circuits, we think the meaning of "current" calendar year under § 2000e(b) is relevant to the meaning of "current" calendar year under § 1981(a)(b)(3). See Depaoli, 489 F.3d at 622; Vance, 209 F.3d at 446. This parallel provision of Title VII, which preexisted the 1991 amendments, limits the definition of "employer" under Title VII to persons with fifteen or more employees during a period of weeks in the "current or preceding calendar year." 42 U.S.C. § 2000e(b).

DM argues that the identical language in § 2000e(b) and § 1981a(b)(3) need not be construed identically because the two sections operate at different stages of a Title VII case and serve different purposes. The § 2000e(b) question comes up at the start of a case and determines whether a plaintiff has satisfied an element of stating a claim under Title VII. See Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006). By contrast, the § 1981a(b)(3) question comes up at the end of a case and has nothing to do with whether the plaintiff stated a claim under the Act. DM argues that the purpose of § 1981a(b)(3) is to avoid jury verdicts that would

-13-

drive employers into bankruptcy, and argues that this purpose is best served by its interpretation of that provision.[6]

Contrary to DM's assertions, § 2000e(b) and § 1981a(b)(3) have in common a purpose to prevent ruinous verdicts against small employers. In Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440 (2003), the Supreme Court noted that Congress's decision to limit the definition of an "employer" in Title VII and other anti-discrimination statutes to a person with fifteen or more employees reflected its intent to limit both liability and the costs of compliance and litigation for very small firms. Id. at 444 & n.3, 446-47. It is true that § 1981a(b)(3) provides protections even for larger employers, but at the very least it shares a common purpose with § 2000e(b) with respect to small employers. In addressing larger employers, moreover, § 1981a(b)(3) effectuates a notion that employers should not be liable for ruinous awards consistent with the narrower limitation in § 2000e(b).

When Congress passed the Civil Rights Act of 1991, the phrase "current or preceding calendar year" had been construed in

_____

[6]     DM quotes from comments of Senator Dale Bumpers during the Senate floor debate prior to passage. See 137 Cong. Rec. S15,479 (daily ed. Oct. 30, 1991). These comments evidence a concern about protecting small employers, but they do not convey information about the separate issue of when to measure the size of an employer. Further, the views of individual members of Congress are not dispositive on issues of statutory interpretation. See Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 522 n.12 (1994).

-14-

the Title VII context. Although there was no Supreme Court decision on point at the time, there was ample case law construing "current" calendar year under § 2000e(b) as the year of the discrimination. See, e.g., Davis v. W. Cmty. Hosp., 786 F.2d 677, 681 (5th Cir. 1986); McGraw v. Warren Cnty. Oil Co., 707 F.2d 990, 991 (8th Cir. 1983); Dumas, 612 F.2d at 979 n.4, overruled on other grounds by Larkin v. Pullman-Standard Div., Pullman, Inc., 854 F.2d 1549, 1569 (11th Cir. 1988); Slack v. Havens, 522 F.2d 1091, 1093 (9th Cir. 1975); see also Komorowski v. Townline Mini-Mart & Rest., 162 F.3d 962, 965 (7th Cir. 1998) (noting that "[c]ourts consistently have held that the phrase 'current calendar year' refers to the year in which the alleged discrimination occurred," and citing cases, including cases prior to the 1991 Act).

The understanding of a term employed by Congress is ordinarily determined as of the time of enactment. See Carcieri, 129 S. Ct. at 1064. Terms "that have acquired a specialized meaning in the legal context must be accorded their legal meaning." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 615 (2001) (Scalia, J., concurring). Congress is presumed to know judicial interpretations of statutory terms as of the time it amends statutes. See id. at 615-16; Cannon v. Univ. of Chicago, 441 U.S. 677, 696-98 (1979). In addition, under normal rules of statutory construction, "identical words used in different parts of the same act are intended to have the same meaning."

-15-

Dep't of Revenue of Ore. v. ACF Indus., 510 U.S. 332, 342 (1994) (quoting Sorenson v. Sec'y of Treasury, 475 U.S. 851, 860 (1986)) (internal quotation marks omitted).

The fact that Congress used the same terminology in the 1991 amendments as in § 2000e(b) makes it quite likely, under normal canons of statutory interpretation, that it intended to adopt the year of discrimination as the "current" year in § 1981a(b)(3). As the Fourth Circuit has noted, the two provisions are interdependent. See Depaoli, 489 F.3d at 622 ("Reading §§ 1981a(b)(3) and 2000e(b) together, it becomes apparent that the reason § 1981(b)(3) provides no damage cap for employers with less than 15 employees is that such employers are presumed to be exempt from Title VII's requirements by virtue of § 2000e(b)."). Indeed, if the "current" calendar year under § 2000e(b) referred to the year of the discrimination and the "current" calendar year under § 1981a(b)(3) referred to the year of judgment, employers with more that fifteen employees at the start of the litigation but less than fifteen employees at the time of judgment could be liable for uncapped damages. See id. at 622. This could not be Congress's intent given its stated interest in protecting small employers from ruinous awards. See Wells, 538 U.S. at 444 n.3, 446-47.

IV.

Having concluded that the "current" year for purposes of § 1981a(b)(3) refers to the year of the discrimination, we may quickly dispose of two subsidiary issues.

First, DM makes a mild protest that even under this construction of § 1981a(b)(3), the damage reduction should be upheld because there is no definitive evidence of record as to the number of employees it had at the time of discrimination. Under the logic of Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal., 508 U.S. 602 (1993), however, it is DM who bears the burden of establishing the prerequisites for capping the award. Neither the text nor the legislative history of § 1981a(b)(3) speaks to who bears the burden of showing the relevant number of employees, but due process concerns and the traditional burden of proof dictate that the defendant employer bear the burdens of production and persuasion on the caps. See id. at 628-30.

The applicability of the caps is not an element of the Title VII claim. Instead, the defendant employer must affirmatively move to impose the cap and to present relevant evidence. Cf. Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 57 (2005) (burden of persuasion may appropriately be placed on defendant to prove affirmative defenses or exemptions); see also Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 589 (1st Cir.

-17-

1979) ("[N]ormally the party asserting the affirmative of a proposition should bear the burden of proving that proposition."). Moreover, the "ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." Schaffer, 546 U.S. at 60 (quoting United States v. N.Y., N.H. & H.R. Co., 355 U.S. 253, 256 n.5 (1957)) (internal quotation marks omitted). It is clear that employers are in the best position to establish how many employees they have at a given time.[7]

Second, Hernández-Miranda asks that the case be remanded to allow reinstatement of the full $300,000 award on the theory that it can be applied to a pendent claim of discrimination under Puerto Rican law. The district court held that this state law claim had been abandoned pretrial and we agree.

The judgment is vacated and the case is remanded for further proceedings consistent with this opinion; to wit, reduction of the jury award to $200,000. Costs are awarded to plaintiff.

So ordered.

---

[7] As DM has not introduced any evidence concerning how many employees it had in 2002, we look only to the evidence it introduced with respect to 2003 and 2004.

-18-