Gisselle **BERMÚDEZ–ROSA,**
et al., Plaintiffs,

v.

**KELLY SERVICES, INC.,** Defendant.

**Civil No. 09–2286 (ADC).**

United States District Court,
D. Puerto Rico.

Sept. 30, 2011.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiffs.

Antonio L. Garcia, Pedro J. Manzano–Yates, Fiddler Gonzalez & Rodriguez, P.S.C, San Juan, PR, for Defendant.

## OPINION AND ORDER

AIDA M. DELGADO–COLON, Chief Judge.

Plaintiffs, Gisselle Bermúdez–Rosa ("plaintiff" or "Bermúdez"), José R. Conde–Ortíz ("Conde"), and their Conjugal Partnership (collectively, "plaintiffs"), bring suit against defendant, Kelly Services, Inc. ("Kelly" or "defendant"), alleging, *inter alia,* that she was discriminated against in her employment due to her sex and age. Bermúdez invokes the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;* Title VII of the Civil Rights Act of 1964, 42 U.S.C. section

2000e *et seq.;* Commonwealth Act No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 146 *et seq.;* Commonwealth Act No. 69 of July 6, 1985, as amended, P.R. Laws Ann. tit. 29, § 1321 *et seq.;* and, Commonwealth Act No. 80 of May 30, 1985, as amended, P.R. Laws Ann. tit. 29, § 185(a) *et seq.* Plaintiffs further claim damages pursuant to the Commonwealth's general tort statutes. **ECF No. 1.**

Now before the court is defendant's motion for summary judgment, statement of uncontested facts, reply statement and reply brief as well as plaintiffs' opposition to defendant's summary judgment and memorandum in support thereof, and response to defendant's statement of facts. **ECF Nos. 17, 17–1, 17–2, 30, 24, 24–1.** At issue is whether plaintiffs' allegations and proffered evidence support causes of action for sex and age discrimination as well as retaliation.

## I. Factual Background

Unless otherwise noted, the following relevant facts are derived from defendant's statement of facts and plaintiffs' responses, as well as plaintiff's statement of additional relevant facts. **ECF Nos. 17–1, 24, 24–1 at 15–17.** Consistent with the summary judgment standard, the court states the facts in the light most favorable to plaintiff, who is the nonmoving party. *See Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006).

As a preliminary matter in the assessment of the statements of uncontested facts, the court notes distinct evidentiary issues in plaintiffs' opposition papers. First, a thorough review of plaintiffs' responses and objections to defendant's statement of uncontested material facts (**ECF No. 24–1**) reveals that plaintiffs failed to properly contest the vast majority of defendant's statements. As defendant

properly asserted in its reply papers (**ECF No.** 30 at 2–10), plaintiffs' denials and qualifications add facts that should have been filed in plaintiffs' separate statement in accordance with this court's local rules, contain immaterial assertions, or consist of mere "speculation, generalities, conclusory assertions, improbable inferences, and, for lack of a better phrase, a lot of 'hot air.' " *Gómez–González v. Rural Opportunities, Inc.,* 658 F.Supp.2d 325, n. 2 (D.P.R.2009), citing *Domínguez v. Eli Lilly and Co.,* 958 F.Supp. 721, 738 (D.P.R.1997).

Second, plaintiffs' responses deny or qualify most of defendant's statements of uncontested facts by referencing Bermúdez' statement under penalty of perjury ("Bermúdez' statement"). *See* **ECF No.** 24–1 at ¶¶ 19, 22, 23, 25, 27–29, 30, 31, 33, 34, 36, 45, 47, 51, 53, 56–59, 60, 62, 63–69, 70–79, 80–83, 85, 86, 88–94, 97, 101. However, the majority of the assertions in Bermúdez' statement do not contain any indicia as to how Bermúdez is competent to testify regarding these matters, nor does she provide any evidentiary support to account for, or corroborate, the purported facts asserted therein. Fed.R.Civ.P. 56(c)(4) specifically states: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Consistent with these strictures, the First Circuit has stated that, "... on summary judgment, the parties in their supporting affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Hoffman v. Applicators Sales And Service, Inc.,* 439 F.3d 9, 14 (1st Cir.2006)(decided under former Fed.R.Civ.P. 56(c))(internal citations and quotations omitted).[1] Consequently, when

---

1. As will be discussed later, the recent amendments to the cited rule did not change the

a party fails to properly support an assertion of fact or fails to address the opposing party's assertion, the court may consider the assertion undisputed or grant summary judgment, "if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." FED.R.CIV.P. 56(e).

In addition, Bermúdez' statement was obtained after her deposition testimony was offered and after defendant filed its motion for summary judgment and statement of uncontested facts. In this new statement, Bermúdez raises matters that were not proffered in her deposition testimony or that simply contradict her prior testimony. Bermúdez' statement primarily assembles assertions that represent her own subjective interpretations, beliefs, and conclusions regarding her employment with Kelly. However, the same are devoid of any record support. As the First Circuit has made abundantly clear, the court need not "take at face value [plaintiff's] subjective beliefs when they are not factually based and merely constitute conclusory, self-serving statements." *Torrech–Hernández v. General Elec. Co.*, 519 F.3d 41, 48 (1st Cir.2008); *see also Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir.1993) (material creating a factual dispute "must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth") (citing *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)). Therefore, "[w]hile it is true that in the summary judgment context all *reasonable* inferences must be drawn in favor of the non-moving party, the District Court is not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party."

*Torrech–Hernández v. General Elec. Co.*, 519 F.3d at 47, n. 1.

A thorough review of the record, particularly plaintiffs' opposition papers, reveals that plaintiffs' responses and objections to defendant's proposed statement of uncontested facts include many assertions that lack any evidentiary or record support and fail to show how Bermúdez is competent to testify regarding the same. *See* ECF No. 24–1, ¶¶ 19, 22, 23, 25, 27, 28, 29, 31, 33, 34, 36, 45, 47, 51, 53, 56, 57, 58, 59, 60, 62, 63, 64, 65, 66, 67, 68, 69, 70–83, 85, 86, 88, 89, 90, 91, 92, 93, 94, 97, 101; *see also* plaintiff's additional relevant facts, ECF No. 24–1, ¶¶ 2, 3. These statements standing alone are insufficient to counter defendant's statements of uncontested fact, nor do they create a triable issue of fact to withstand summary judgment. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994) (holding that nonmovant cannot avoid summary judgment by submitting an affidavit that contradicts, without explanation for the contradiction, the witness's deposition testimony); *see also Meuser v. Federal Express Corp.*, 564 F.3d 507, 515 (1st Cir.2009)(internal citation and quotations omitted)("the non-moving party's burden cannot be satisfied with a declaration that without proper explanation contradicts his/her prior deposition testimony"). Therefore, the court will not credit plaintiffs' opposing statements that rely on Bermúdez' unsworn affidavit, are otherwise unsupported by the record, and/or rely on inadmissable evidence. In light of the foregoing, the court will cull most of the relevant facts from defendant's statement. ECF No. 17–1.

Kelly is a nationwide company that provides workforce solutions to their clients. ECF No. 17–1 at ¶ 1; ECF No. 24–1 at

spirit or purpose of the rule. The amendments only bolstered, via legislation, the prior

holdings of the First Circuit Court of Appeals cited above.

1. Kelly consultants partner with their clients to evaluate and determine successful workforce solutions for their organizations. ECF No. 17–1 at ¶ 4; ECF No. 24–1 at ¶ 4. Among these workforce alternatives, Kelly offers temporary staffing, temporary-to-hire staffing and direct-hire staffing. ECF No. 17–1 at ¶ 2; ECF No. 24–1 at ¶ 2. At all times relevant to the complaint, Kelly's Direct Division was in charge of the "direct hire staffing" for its clients. The purpose of said division was to recruit, screen, and place high-quality candidates as direct hires for its clients. ECF No. 17–1 at ¶ 3; ECF No. 24–1 at ¶ 3.

Kelly's Puerto Rico branch is primarily composed of females in both its regular and internal work team, including consultants and administrative employees. By January 2009, Kelly had approximately 80 regular employees; less than 20 were male. At the moment of plaintiff's termination, more than 75% of Kelly's employees were females. ECF No. 17–1 at ¶ 5; ECF No. 24–1 at ¶ 5.

Mr. Héctor Ortíz ("Ortíz"), born on December 27, 1968, has been Kelly Puerto Rico's Corporate Director and General Manager since 2006. His employment with Kelly began on September 1, 1999. ECF No. 17–1 at ¶ 6; ECF No. 24–1 at ¶ 6. Ms. Sonia Román ("Román"), Kelly's Human Resources Manager, was born on June 22, 1962. Román's employment with Kelly began on June 1, 1987. ECF No. 17–1 at ¶ 7; ECF No. 24–1 at ¶ 7. Ms. Marta Méndez ("Méndez") was Kelly's Commercial Operations Manager. Méndez was born on September 20, 1959. Méndez' employment with Kelly began on January 15, 1985. ECF No. 17–1 at ¶ 8; ECF No. 24–1 at ¶ 8.

Plaintiff was born on March 3, 1965. ECF No. 17–1 at ¶ 9; ECF No. 24–1 at ¶ 9, Plaintiff's Additional Fact ("PAF") at

1. She holds a Bachelors Degree with a Major in Industrial Psychology. Although she has credits approved towards a Master in Industrial Psychology, she has not completed her Master's degree. ECF No. 17–1 at ¶ 10; ECF No. 24–1 at ¶ 10. Plaintiff's employment with Kelly began on May 1, 1991. ECF No. 17–1 at ¶ 11; ECF No. 24–1 at ¶ 11. Méndez interviewed and hired plaintiff. ECF No. 17–1 at ¶ 12; ECF No. 24–1 at ¶ 12.

At the beginning of her employment, plaintiff received and reviewed Kelly's Employee Handbook. ECF No. 17–1 at ¶ 13; ECF No. 24–1 at ¶ 13. Kelly's Employee Handbook includes a policy that prohibits discrimination, harassment and retaliation at the workplace. ECF No. 17–1 at ¶ 14; ECF No. 24–1 at ¶ 14. The policy provides a grievance procedure to be followed by any employee who feels discriminated, harassed or retaliated against. Plaintiff knew of this procedure. ECF No. 17–1 at ¶ 15; ECF No. 24–1 at ¶ 15. She was aware of Kelly's norms, policies and procedures. ECF No. 17–1 at ¶ 16; ECF No. 24–1 at ¶ 16.

Plaintiff also received Kelly's Dress Code Policy. In addition, the Employee Handbook has a section explaining Kelly's required dress code. ECF No. 17–1 at ¶ 17; ECF No. 24–1 at ¶ 17. Plaintiff admitted that compliance with the Dress Code Policy is important to Kelly. ECF No. 17–1 at ¶ 18; ECF No. 24–1 at ¶ 18. Further, plaintiff received multiple trainings related to her functions and Kelly's operations and systems, including training on sales techniques. She also received periodical training regarding workplace harassment. ECF No. 17–1 at ¶ 20; ECF No. 24–1 at ¶ 20.

During her tenure at Kelly, plaintiff occupied the following positions: Evaluating Supervisor, Supervisor, Sales Manager, Business Development Manager, Branch

Manager, Account Representative, and Direct Placement Manager. ECF No. 17–1 at ¶ 19; ECF No. 24–1 at ¶ 19. As Evaluating Supervisor, plaintiff evaluated and hired personnel at her Branch. ECF No. 17–1 at ¶ 21; ECF No. 24–1 at ¶ 21. As Supervisor, plaintiff was in charge of several client accounts and supervised staff. Plaintiff also managed contract renewals, payroll issues and other staff-related situations. ECF No. 17–1 at ¶ 22; ECF No. 24–1 at ¶ 22. As Sales Manager for the temporary staffing division, plaintiff visited clients to sell Kelly's services and attract new business. ECF No. 17–1 at ¶ 23; ECF No. 24–1 at ¶ 23. Plaintiff's functions as an Evaluating Supervisor and as Supervisor were different from those performed as Sales Manager. ECF No. 17–1 at ¶ 24; ECF No. 24–1 at ¶ 24.

As Business Development Manager, plaintiff primarily managed national corporate accounts higher than $500,000. She also developed new business for the company, managed proposals and sales strategies, as well as developed new ideas. ECF No. 17–1 at ¶ 25; ECF No. 24–1 at ¶ 25. Although sales-related, plaintiff's functions as Business Development Manager varied in approach from those performed as Sales Manager due to the types of clients managed in each. ECF No. 17–1 at ¶ 26; ECF No. 24–1 at ¶ 26. As Branch Manager, plaintiff was in charge of all the territory comprised by her Branch. ECF No. 17–1 at ¶ 27; ECF No. 24–1 at ¶ 27. As Account Representative, plaintiff developed prospective clients and gave continuity to existing ones. ECF No. 17–1 at ¶ 28; ECF No. 24–1 at ¶ 28. As Direct Placement Manager, plaintiff recruited, sold, assigned, collected and performed administrative duties. ECF No. 17–1 at ¶ 29; ECF No. 24–1 at ¶ 29. For approximately her last ten (10) years at Kelly, Bermúdez held managerial positions related to sales and branch operations. ECF No. 17–1 at ¶ 30; ECF No. 24–1 at ¶ 30.

On April of 2007, plaintiff was given the opportunity of managing Kelly Direct, a division that had previously existed and was being re-launched. Its objective was to recruit, screen and place high quality candidates in professional positions as direct and regular hires for its clients. ECF No. 17–1 at ¶ 31; ECF No. 24–1 at ¶ 31. The Kelly Direct Division used to be named Kelly Select and a person was in charge of said division. The Kelly Select Division was eliminated due to administrative changes. ECF No. 17–1 at ¶ 32; ECF No. 24–1 at ¶ 32.

Plaintiff was entrusted with the development of the Kelly Direct business line. Plaintiff acknowledged that this line was very important for the company in order to compete with other recognized companies within the island that offered direct placement services. ECF No. 17–1 at ¶ 34; ECF No. 24–1 at ¶ 34. As Kelly Direct Manager, plaintiff's direct supervisor was Méndez, Commercial Operations Manager. ECF No. 17–1 at ¶ 35; ECF No. 24–1 at ¶ 35. Kelly Direct had only one manager; therefore, plaintiff's position was unique. ECF No. 17–1 at ¶ 36.

As part of her assignment as Manager of Kelly Direct, plaintiff was trained and briefed on the division. The training took place in Detroit, Michigan at Kelly's corporate offices. ECF No. 17–1 at ¶ 37; ECF No. 24–1 at ¶ 37. The training included the tools and knowledge required for the performance of her functions as a Kelly Direct Manager. Plaintiff had the opportunity of clarifying any doubts related to her duties there. ECF No. 17–1 at ¶ 38; ECF No. 24–1 at ¶ 38.

Plaintiff's duties as Manager of Kelly Direct included: operating and managing Kelly Direct's product within the PR Commercial Division by defining the strategy,

executing the business plan established, and ensuring that the product line objectives for profitability, sales, service and share of market penetration were met or exceeded. ECF No. 17–1 at ¶ 39; ECF No. 24–1 at ¶ 39. Plaintiff also: (i) worked in conjunction with the other sales and service staff at Kelly to help identify and develop Kelly Direct opportunities, (ii) educated the service team on the opportunities available to candidates only interested in full-time placement positions, (iii) initiated and/or followed up on direct hire sales leads in Puerto Rico; and (iv) established the department as a leader in the direct hiring arena, promoting and increasing customer and candidate brand awareness through appropriate networking and community events, among others. ECF No. 17–1 at ¶ 40; ECF No. 24–1 at ¶ 40.

As Kelly Direct's Manager, plaintiff also sold and recruited high quality candidates in professional positions as direct and regular hires for its clients. ECF No. 17–1 at ¶ 41; ECF No. 24–1 at ¶ 41. Her recruitment duties included acting as head hunter and visiting fairs. ECF No. 17–1 at ¶ 42; ECF No. 24–1 at ¶ 42. Plaintiff was aware that the company's plan with the Kelly Direct Division was to increase sales volume and to compete with other locally recognized companies. ECF No. 17–1 at ¶ 43; ECF No. 24–1 at ¶ 43. As such, Kelly established goals and objectives for the Kelly Direct Division. ECF No. 17–1 at ¶ 44; ECF No. 24–1 at ¶ 44.

Plaintiff prepared a Business Plan with Kelly's goals and objectives, which she recognized were reasonable. The plan was presented in the second quarter of 2007. ECF No. 17–1 at ¶ 45; ECF No. 24–1 at ¶ 45. Plaintiff had to generate reports and document her actions with prospective and potential clients. She also had to document her sales. ECF No. 17–1 at ¶ 46; ECF No. 24–1 at ¶ 46. Plaintiff needed to comply with a minimum number of calls and visits to potential clients. ECF No. 17–1 at ¶ 47; ECF No. 24–1 at ¶ 47. Plaintiff acknowledged that, when developing new business relations, a difference exists between calling and visiting clients since the latter is more appropriate for creating a good impression upon clients. ECF No. 17–1 at ¶ 48; ECF No. 24–1 at ¶ 48. Plaintiff also admitted that, due to the nature of Kelly's business, the image of its employees is very important. ECF No. 17–1 at ¶ 49; ECF No. 24–1 at ¶ 49.

As part of her staff, plaintiff had one Kelly Direct recruiter under her supervision named Wanda Rivera ("Rivera"). Rivera assisted plaintiff since August of 2008. ECF No. 17–1 at ¶ 50; ECF No. 24–1 at ¶ 50. Before Rivera, plaintiff also had support and assistance from other employees: Wanda Colón, for one client in particular, and Kimmy Contrera for a brief period. ECF No. 17–1 at ¶ 51; ECF No. 24–1 at ¶ 51. Rivera assisted plaintiff in the process of searching and interviewing the direct placement candidates. She conducted the initial interviews of said candidates. Plaintiff admitted that, with Rivera, she had the assistance required for her to concentrate on her sales duties. ECF No. 17–1 at ¶ 52; ECF No. 24–1 at ¶ 52.

Plaintiff's objectives were to complete 24 new business development calls; generate 2 new orders; conduct 8 in person client appointments weekly; and, close a minimum of 2 monthly placements. ECF No. 17–1 at ¶ 53. Plaintiff's principal duty as Kelly Direct's Manager was selling. Specifically, she knew her objectives were based 80% on sales and 20% on operations. ECF No. 17–1 at ¶ 54; ECF No. 24–1 at ¶ 54.

In March 2008, almost a year after being assigned to the Kelly Direct Division, plaintiff received a performance appraisal

which was discussed with her. **ECF No. 17–1** at ¶ 55; **ECF No. 24–1** at ¶ 55. Prior to the appraisal, plaintiff was given a guideline to facilitate communication and ensure consistency in the process. **ECF No. 17–1** at ¶ 61; **ECF No. 24–1** at ¶ 61. As part of this appraisal process, plaintiff detailed her results in comparison with the objectives set forth for her position. Plaintiff agreed with the overall results of the evaluation. **ECF No. 17–1** at ¶ 56; **ECF No. 24–1** at ¶ 56.

In the evaluation, plaintiff was advised that she needed to: comply with the face to face weekly visits; document her actions in the Performance Management Plan; improve on the revenue growth; be more active performing face to face meetings on a weekly basis; and, obtain appointments in advance in order to meet her established goals. She was also warned that she had to report her weekly results. **ECF No. 17–1** at ¶¶ 57–58; **ECF No. 24–1** at ¶¶ 57–58. She was advised that she needed to prepare a list of target accounts from existing and prospective clients for each quarter and that she had to use a sales tracker to monitor sales, calls and visits as well as notify the results to her supervisor. **ECF No. 17–1** at ¶ 59; **ECF No. 24–1** at ¶ 59. Plaintiff was warned that professional business attire was required when visiting customers in order to maintain a high professional image for her division. **ECF No. 17–1** at ¶ 60; **ECF No. 24–1** at ¶ 60.

In May 2008, Méndez and Ortíz met with plaintiff and discussed with her alternatives for being more strategic in order to increase sales in the division. **ECF No. 17–1** at ¶ 62; **ECF No. 24–1** at ¶ 62.[2] During the meeting, plaintiff was warned that she was not complying with her objectives. Consequently, an action plan was de-

signed. **ECF No. 17–1** at ¶ 63; **ECF No. 24–1** at ¶ 63. From June to September 2008, several meetings were held with plaintiff to discuss the status of the action plan. **ECF No. 17–1** at ¶ 64; **ECF No. 24–1** at ¶ 64. On September 24, 2008, plaintiff received and signed a mid year performance appraisal that her supervisor discussed with her. Plaintiff agreed with said appraisal. **ECF No. 17–1** at ¶ 65; **ECF No. 24–1** at ¶ 65.

In the September 2008 appraisal, plaintiff recognized that she had to improve her performance since she was not complying with her weekly objectives of 24 new business development calls and 8 face to face calls. **ECF No. 17–1** at ¶ 66; **ECF No. 24–1** at ¶ 66. Plaintiff was warned that she had to comply with the sales expectations set for her Division. **ECF No. 17–1** at ¶ 67; **ECF No. 24–1** at ¶ 67. She was informed that she would be placed on a Performance Improvement Plan to closely monitor her expected sales performance. **ECF No. 17–1** at ¶ 68; **ECF No. 24–1** at ¶ 68. Plaintiff was also advised that she had to implement a weekly sales plan and be more aggressive generating new clients. **ECF No. 17–1** at ¶ 69; **ECF No. 24–1** at ¶ 69. She was required to submit a weekly sales report by October 5, 2008, and provide the market share information by October 15, 2008. **ECF No. 17–1** at ¶¶ 70–71; **ECF No. 24–1** at ¶¶ 70–71. Plaintiff was warned, once again, that she had to comply with the company's Dress Code Policy. **ECF No. 17–1** at ¶ 72; **ECF No. 24–1** at ¶ 72.

On October 22, 2008, plaintiff received a written warning from her supervisor, which was discussed with her. **ECF No. 17–1** at ¶ 73; **ECF No. 24–1** at ¶ 73. Said warning was due to plaintiff's consistent

---

2. In an attempt to qualify said statement, plaintiffs cite to a page of the deposition transcript that was not included in the referenced Exhibit 3.

failure to comply with her goals and objectives. Specifically, in nine months, plaintiff had only generated 6 orders for the division, well below her 45 order objective. **ECF No. 17–1 at ¶ 74.** Also, plaintiff was not complying with the weekly goal of 8 face to face calls or with the 24 new business development calls, nor had she provided any evidence that she was complying with her goal of maintaining 25 target accounts per quarter. **ECF No. 17–1 at ¶ 75.** Plaintiff did not comply with the task of documenting her efforts on the "2008 Keep Steal and Get". **ECF No. 17–1 at ¶ 76.** As another improvement opportunity, plaintiff was asked to meet with her supervisor on a weekly basis and was required to prepare a sales tracker in order to comply with the sales objectives. **ECF No. 17–1 at ¶ 77; ECF No. 24–1 at ¶ 77.**

Plaintiff's poor performance forced the business decision of eliminating Kelly's Direct Division. Plaintiff was terminated from her employment on January 17, 2009. **ECF No. 17–1 at ¶ 78.** At the time of termination, she was 44 years old. **ECF No. 24–1, PAF at ¶ 1.** Rivera's (the part time recruiter plaintiff supervised) contract was also terminated on January 17, 2009. **ECF No. 17–1 at ¶ 79.** The decision-makers regarding plaintiff's termination were: Ortíz, Méndez and Sonia Román, the Human Resources Manager at the time. **ECF No. 17–1 at ¶ 80.** After the elimination of the Kelly Direct Division, the direct placement duties were redistributed amongst all the company branches in Puerto Rico. At that moment, 5 of Kelly's 8 branches were managed by women. At least 3 of the Branch Managers were older than plaintiff. **ECF No. 17–1 at ¶ 81; ECF No. 24–1 at ¶ 81.** Despite her manager's perception, plaintiff opines that she was always able to perform her duties as Manager of Kelly Direct. **ECF No. 17–1 at ¶ 82; ECF No. 24–1 at ¶ 82.**[3]

Aguilú, who was Kelly Puerto Rico's Manager of Finance and Administration from January of 2007 to December of 2009,[4] stated that, although he did not directly supervise Bermúdez, he was fully aware of her functions and duties as Manager of the Caguas branch and as director of the Kelly Direct division. **ECF No. 24–1 at PAF, ¶ 5, ECF No. 30 at 72, ¶ 5.** He stated in 2008, that the financial goal and/or budget for Kelly Direct was $140,000.00 in revenues, and the remainder of the budget was directly assigned to the divisions of Professional Employees. **ECF No. 24–1 at PAF, ¶ 6, ECF No. 30 at 72, ¶ 6.**

Aguilú stated that he managed and worked with the numbers related to the budget, which was also discussed with Ortíz. **ECF No. 24–1 at PAF, ¶ 7, ECF No. 30 at 72, ¶ 7.** Aguilú further explained that, during 2008, Kelly Direct met its financial goals and objectives, including revenues. He was aware of this because he worked with the monthly financial statements and reports for the Kelly Direct Division. **ECF No. 24–1 at PAF, ¶ 8, ECF No. 30 at 72, ¶ 8.** Albeit unaware of Bermúdez' individual performance, Aguilú informed that the Kelly Direct division met its quota of

---

3. Although plaintiff qualifies this statement by alluding to her deposition testimony, she supports said qualification with her post-summary judgment affidavit instead of her deposition transcript. As highlighted above, and for the reasons previously stated, the court will disregard the post-summary judgment affidavit.

4. Aguilú was in charge of the yearly budget and reviewing the financial information, as well as the accounting for Kelly Puerto Rico. He also took care of the client proposals, pricing of services, and performing additional administrative duties. **ECF No. 24–1 at PAF, ¶ 4, ECF No. 30 at 72, ¶ 4.**

$140,000.00 in revenues in 2008, as well as its revenue goals in 2007. **ECF No. 24–1 at PAF, ¶¶ 9–10, ECF No. 30 at 72, ¶¶ 9–10.** He further averred that, at the time Ortíz informed him that Bermúdez was going to be terminated, Kelly Direct had met its financial objectives and budget. **ECF No. 24–1 at PAF, ¶ 11.**[5]

Plaintiff never formally complained of discrimination. **ECF No. 17–1 at ¶ 83.** Plaintiff's relationship with Méndez was always cordial. She never had problems or personal complaints with Méndez. **ECF No. 17–1 at ¶ 84; ECF No. 24–1 at ¶ 84.** Plaintiff admitted that Méndez never discriminated against her due to her sex. **ECF No. 17–1 at ¶ 85; ECF No. 24–1 at ¶ 85.**

Plaintiff's sex discrimination claim is based on the following allegation: that Ortíz only recruited male employees who had better compensation and treatment. **ECF No. 17–1 at ¶ 86; ECF No. 24–1 at ¶ 86.** To sustain this allegation, plaintiff identified recruitments for the following positions: IT Manager; Engineering Department Manager; Finance Division Manager and Finance Manager for the Regional Office. **ECF No. 17–1 at ¶ 87; ECF No. 24–1 at ¶ 87.** Plaintiff does not know the salaries of the employees hired for any of these positions. **ECF No. 17–1 at ¶ 88.** In addition to the positions plaintiff identified as male hires, Ortíz hired women for the following positions: Account Representatives (Irmarie Vicéns and Nélida Montesinos); KMS Manager (Jezzabel Rivera); KMS Operations Manager (Lucila Ortíz); Finance Manager (Gladys Esteves). One of those female employees was over 50 years old when hired. **ECF No. 17–1 at**

¶ 89; **ECF No. 24–1 at ¶ 89.** Plaintiff also alleges that, on one occasion, she reported deficiencies in the performance of two male employees under Ortíz' supervision and he took no corrective action against them. **ECF No. 17–1 at ¶ 91; ECF No. 24–1 at ¶ 91.** Plaintiff admitted these employees reported to Ortíz and that she never supervised nor evaluated them. **ECF No. 17–1 at ¶ 92; ECF No. 24–1 at ¶ 92.**

Plaintiff's age discrimination claim is based on Ortíz' alleged remarks that she was "obsolete" and suggesting that she change her method of managing situations. Specifically, plaintiff explained that Ortíz referred to the information that she provided as "obsolete" sometimes and that she at times used "old techniques and procedures". Plaintiff also referred to Ortíz' alleged remarks regarding how "old women were always complaining". **ECF No. 17–1 at ¶ 93; ECF No. 24–1 at ¶ 93.** She also alleged that, in other company reorganizations done during her tenure at Kelly, younger employees were transferred to other positions and not dismissed. **ECF No. 17–1 at ¶ 94; ECF No. 24–1 at ¶ 94.**[6] Plaintiff admitted that the employees transferred due to these reorganizations were of all ages and genders. **ECF No. 17–1 at ¶ 95; ECF No. 24–1 at ¶ 95.** She admitted that, in order to be transferred, employees had to comply with certain requisites and parameters, including good performance. **ECF No. 17–1 at ¶ 96; ECF No. 24–1 at ¶ 96.** She admitted that the managerial perception at Kelly was that her performance was not good. **ECF No. 17–1 at ¶ 97.**

---

**5.** Plaintiff's additional statement number 12 was disregarded because plaintiff failed to submit the page of the deposition transcript in support of said statement. *See* **ECF Nos. 24–1, PAF ¶ 12, 24–4.**

**6.** Although in support plaintiffs cite to Bermúdez' post-summary judgment affidavit, she fails to admit, deny or qualify defendant's statement. *See* **ECF No. 24–1 at 14, ¶ 94.**

Finally, plaintiff alleges that Ortíz treated her differently in comparison with other employees. Basically, she alleges that Ortíz once criticized her performance on a presentation she gave and that he was wary of where she was and was constantly evaluating her. **ECF No. 17–1 at ¶ 98; ECF No. 24–1 at ¶ 98.** Plaintiff admitted that Ortíz did not like her performance on said presentation and asked her to improve. **ECF No. 17–1 at ¶ 99; ECF No. 24–1 at ¶ 99.** Plaintiff admitted that Ortíz was monitoring her to see if she was reporting to the central offices in Hato Rey, as she was instructed. **ECF No. 17–1 at ¶ 100; ECF No. 24–1 at ¶ 100.** Plaintiff never presented a verbal or written complaint of discrimination to any manager or official of Kelly. **ECF No. 17–1 at ¶ 101; ECF No. 24–1 at ¶ 101.**

## II. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca–Cola Co.,* 522 F.3d 168, 175 (1st Cir.2008)(quoting the former FED.R.CIV.P. 56(c)).[7] When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004).

However, the non-movant "must point to competent evidence and specific facts to stave off summary judgment" in order to defeat a properly-supported motion for summary judgment. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011). Thus, the court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* (quoting *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir.2001)). In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or non-movant—who would bear the burden of proof on that issue at trial." *Alamo Rodriquez v. Pfizer Pharma.,* 286 F.Supp.2d 144, 151 (D.P.R.2003) (citing *Pérez v. Volvo Car Corp.,* 247 F.3d 303, 310 (1st Cir. 2001)).

"A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson,* 522 F.3d at 175 (quoting *Sánchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.,* 515 F.3d 20, 25 (1st Cir.2008). To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez v. Volvo Car Corp.,* 247 F.3d 303, 317 (1st Cir.2001)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be consid-

---

**7.** While Rule 56 was recently amended, effective December 1, 2010, "the substantive standard for summary judgment remain[ed] unchanged." *Ahern v. Shinseki,* 629 F.3d 49, 54 n. 2 (1st Cir.2010) (citing FED.R.CIV.P. 56 advisory committee's note). The primary alteration is the inclusion of a "procedures" section which, in part, incorporates a common procedure for presentation of factual evidence and an anti-ferreting rule, similar to those already in place in this District, into the summary judgment standard. *Compare* FED.R.CIV.P. 56(c) & (f) *with* D.P.R. Civ.R. 56.

ered on summary judgment." *Vazquez v. Lopez–Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III. Discussion

Bermúdez alleges that defendant discriminated against her due to her gender and age and unjustly terminated her in retaliation for complaining of these acts. **ECF No. 1.** In response, defendant moves for summary judgment, arguing that plaintiffs' claims fail since Bermúdez has not established a *prima facie* case of sex or age discrimination. Alternatively, Kelly argues that it possessed legitimate, nondiscriminatory reasons for its employment decisions because Bermúdez was not meeting the company's expectations and plaintiffs were unable to demonstrate that the nondiscriminatory reason for Bermúdez' termination was retaliatory or pretextual. **ECF No. 17–2.** Plaintiffs counter that summary judgment should be denied because Bermúdez met and exceeded her employer's legitimate job expectations; therefore, the employment actions taken against Bermúdez were discriminatory, retaliatory and pretextual. **ECF No. 24.** The court will address each contention in turn.

### A. ADEA and Title VII

In order to prevail in age or gender discrimination claim, the plaintiff's age or sex must have "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Hoffman v. Applicators Sales & Serv., Inc.*, 439 F.3d 9, 17 (1st Cir.2006). Here, there is no direct evidence of age and/or gender discrimination. *See, e.g., Vesprini v. Shaw Contract Flooring Servs., Inc.*, 315 F.3d 37, 41 (1st Cir.2002) ("Although ... somewhat murky, the term 'direct evidence' normally contemplates only those 'statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision.'" (emphasis omitted)). When no direct evidence of discrimination exists, the plaintiff may prove her case through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Bennett v. Saint–Gobain Corp.*, 507 F.3d 23, 30 (1st Cir.2007). Therefore, the burden-shifting framework applies to the claims at bar.

■ For a gender-based discriminatory discrimination claim, the plaintiff bears the burden of establishing that: "(1) she was within a protected class, (2) [she] possesses the necessary qualifications and adequately performed her job, (3) but was nevertheless dismissed, and (4) her employer sought someone of roughly equivalent qualifications to perform substantially the same work." *Gómez–González v. Rural Opportunities, Inc.*, 626 F.3d 654, 662 (1st Cir.2010), quoting *Rodriguez–Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 58 (1st Cir.2005).

■ Similarly, in order to establish a prima facie case of age-based termination under the ADEA, "plaintiff must establish that (1) she was at least forty years old; (2) she was qualified for the position she had held; (3) she was fired; and (4) 'the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services.'" *Id., quoting Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 447 (1st Cir.2009).

Once plaintiff has made out a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate,

non-discriminatory reason for its adverse employment action. *See Bennett,* 507 F.3d at 30–31. The defendant's burden at this stage is only a burden of production; the ultimate burden of proof remains always with the plaintiff. *See Domínguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir.2000) ("The defendant's burden at this stage is only a burden of production; the burden of proof remains with the plaintiff at all times."). If the defendant is able to meet its burden, "the plaintiff no longer can rest on the initial inference of discrimination but, rather, must show that the defendant's articulated reason is pretextual." *Bennett,* 507 F.3d at 31 (citing *Dávila v. Corporacion De Puerto Rico Para La Difusion Publica,* 498 F.3d 9, 16 (1st Cir. 2007)). Thus, "the focus shifts back to the plaintiff, who must then show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory." *Lockridge v. Univ. of Me. Sys.,* 597 F.3d 464, 470 (1st Cir.2010).

Here, defendant concedes that Bermúdez falls squarely within the purview of both ADEA and Title VII's protection as she is an over 40 year old female. **ECF No. 17–2,** at 7; **ECF No. 30–1,** at 2. Further, defendant also concedes that she suffered an adverse employment action since she was terminated from her employment with Kelly. *Id.* Therefore, Bermúdez clearly has met the first and third prongs of the *McDonnell Douglas* burden-shifting framework. However, parties part ways on the second and fourth prongs.

Bermúdez maintains that she did, in fact, meet her employer's legitimate job expectations because she exceeded the sales quota and her division met its revenue goals. Defendant, in turn, argues that the fact that the division met its revenue goals does not diminish the equally important and non-discriminatory fact that Bermúdez was not meeting her individual objectives and goals.

### B. Legitimate and Non–Discriminatory Reason for Dismissal

Here, the record holds clear that Bermúdez, as Kelly Direct's Manager, was held accountable for complying with certain sales objectives, which included new business development calls, conducting in person weekly appointments with clients, and closing a minimum of 2 placements per month. The record equally holds that, since 2007, Bermúdez was admonished that she needed to comply with these objectives and use the company's sales tracker to monitor sales, calls and client visits to keep her supervisor abreast of the results.

Nonetheless, despite these admonishments, plaintiff did not improve on her objectives. In following up, later on plaintiff received a verbal warning on May 22, 2008. Her supervisors, Méndez and Ortíz, met with Bermúdez in an effort to coach her on her deficiencies. Yet, she failed to improve and was once again warned in the 2008 mid-year performance appraisal. Due to her continued deficiencies, Bermúdez was placed on a Performance Improvement Plan.[8] After months of counseling Bermúdez on the need to improve her performance in order to meet her sales objectives and assisting her in reaching those goals, Kelly decided to eliminate the Kelly Direct Division and terminate Bermúdez. Her functions were redistributed

---

**8.** The undisputed facts show that, during a nine month period, plaintiff had only generated 6 orders for the division, instead of the 45 order objective, and she had not complied with her face-to-face or new business development call objectives. Further, she had not complied with documenting her sales efforts.

amongst other Kelly employees. Bermúdez, albeit in disagreement with said assessment, repeatedly admitted that her supervisors perceived her performance as being deficient and understood that her supervisors highlighted these perceived deficiencies in the various memoranda issued to her and at meetings held with her to address her performance deficiencies. Thus, in light of the uncontested facts above, Kelly has provided legitimate non-discriminatory reasons for Bermúdez' termination.

Notwithstanding, the First Circuit has instructed that courts "cannot consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case." *Meléndez v. Autogermana, Inc.,* 622 F.3d 46, 51 (1st Cir.2010). Since Kelly invoked Bermúdez' failure to meet her individual objectives in arguing that she was dismissed for non-discriminatory reasons, the court cannot rely on her poor performance to assess whether she satisfied the legitimate expectations prong of her *prima facie* case. Therefore, the court must turn its analysis to pretext in order to afford plaintiffs "the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Id.* (internal citations and quotations omitted).

## C. Pretext

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Gómez–González v. Rural Opportunities,* 626 F.3d at 662–63, *quoting Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323

(10th Cir.1997) (internal quotation marks and citations omitted).

■ Assuming *arguendo* that plaintiffs' *prima facie* showing had been made, they have failed to establish that Kelly's legitimate, non-discriminatory reasons for its employment decisions, *i.e.,* eliminating the Kelly Direct Division and terminating Bermúdez for her performance, are pretextual. Instead, Bermúdez relies on speculation and unsupported-by-the evidence conclusions regarding her performance to prove pretext. Yet, the only evidence Bermúdez offers to support these contentions is her assertion that she was met and exceeded her objectives and she complied with her employer's expectation because the Kelly Direct Division met its sales goals.

Plaintiffs' challenge is belied by the fact that the record and the undisputed facts reflect Kelly's consistent dissatisfaction with Bermúdez' performance, dating back to 2007. The record also reflects that her supervisors met with her on various occasions to address these concerns from May through October of 2008. In memoranda and during several meetings, Bermúdez' supervisors expressed their concerns regarding her performance and her non-compliance with her objectives. During this time, Kelly's management placed Bermúdez on action plans, issued warnings, and monitored her performance through a performance improvement plan, to no avail. Bermúdez' performance simply did not meet her employer's expectations. In these appraisals, memoranda, and action plans in which her performance flaws were highlighted, Bermúdez did not raise the performance and bonus discrepancies now brought here to circumvent summary judgement.

The record is equally bereft of any evidence to suggest that Bermúdez objected to or otherwise challenged her employer's

expectations as unlawful, discriminatory, unreasonable or unsound. Thus, pretext is found wanting, specially given that Bermúdez candidly admitted that Kelly's managerial perception of her performance was sub-par.[9] *See Garcia v. Bristol–Myers Squibb Co.*, 535 F.3d at 34 (affirming summary judgment while noting the record "more than adequately demonstrates García's poor work performance and the deterioration of her performance over the course of her PIP, which she essentially does not dispute. Similarly, the record does not provide any support for the proposition that the evaluation process itself was tainted by ... bias").

█ Next, plaintiffs proffer that pretext is hidden in Kelly's alleged conflicting reasons regarding Bermúdez' termination. Plaintiffs point to the fact that the Kelly Direct Division met its sales objectives for 2008; therefore, the decision to terminate her for performance and eliminate the Kelly Direct Division are a sham.[10] However, after careful perscrutation of the record, the court finds none. Kelly's decision to eliminate the Kelly Direct Division and its decision to terminate plaintiff for performance hold no contradiction. *See Gómez–González v. Rural Opportunities*, 626 F.3d at 663 (employer's differing or shifting reasons for termination found consistent). Although plaintiffs, or even the court, may find implausible Kelly's decision to eliminate a division that met its revenue goals, the same falls squarely within Kelly's providence as a business judgment. The court does not, for it can not, sit to challenge or question the employer's business decisions. As the First Circuit has stressed, courts in employment discrimination cases may not substitute judicial judgments for the business judgments of employers. *Arroyo–Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 221 (1st Cir.2008)(internal citations and quotations omitted). "In addition, pursuant to the 'business judgment' rule[,] an employer is free to terminate an employee for any nondiscriminatory reason, even if its business judgment seems objectively unwise." *Webber v. Int'l Paper Co.*, 417 F.3d 229, 238 (1st Cir.2005); *see also Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991)("Courts may not sit as super personnel departments, assessing the merits-or even the rationality of employers' nondiscriminatory business decisions.")

Last, plaintiffs have not brought forth any evidence to show that, notwithstanding the employer's stated reasons for the termination, either age or gender was the real reason, or even a motivating factor, in Kelly's decision to terminate her. *Garcia v. Bristol–Myers Squibb Co.*, 535 F.3d 23, 31 (1st Cir.2008) (employer met its burden of providing a legitimate non-discriminatory reason by stating that employee was discharged due to her deficient performance); *Fontanez–Núñez v. Janssen Ortho LLC*, 447 F.3d 50 (1st Cir.2006) (affirming summary judgment when the undisputed

---

**9.** *Bennett v. Saint–Gobain Corp.*, 507 F.3d 23, 31 (1st Cir.2007)("In the absence of some other proof that the decisionmaker harbored a discriminatory animus, it is not enough that his perception may have been incorrect. Rather, the plaintiff must show that the decisionmaker did not believe in the accuracy of the reason given.")(internal citations omitted).

**10.** In addition, Bermúdez alleges that, in other company reorganizations at Kelly, younger employees were transferred to other positions, not dismissed as she was. However, she also admitted that the employees transferred due to these reorganizations were of all ages and genders. Thus, the court does not find discrimination or pretext here, more so since Bermúdez admitted that, in order to be transferred, employees had to comply with certain requisites, including good performance.

evidence established that plaintiff's job performance was not meeting his employer's legitimate job expectations and plaintiff had not presented any evidence to demonstrate that either age or gender discrimination was the real reason for termination). Aside from stating that Bermúdez met and exceeded her objectives, plaintiffs have not pointed to any evidence to demonstrate that either age or gender discrimination was the actual reason or even a motivating factor in Kelly's decision.

■ Plaintiffs' assertion that she was a victim of gender discrimination because Ortíz only recruited male employees, such as the IT Manager, Engineering Department Manager, Finance Division Manager and Finance Manager, and that these male hires enjoyed better compensation and treatment is unavailing. Bermúdez admittedly was unaware of the salaries of these hires and the evidence equally shows that Ortíz hired women as Account Representatives, KMS Manager, KMS Operations Manager, and Finance Manager, one of which was over 50 at the time of hire. Bermúdez also sustains that she reported performance deficiencies of two male employees under Ortíz' supervision and he took no corrective action against them. Yet, Bermúdez never supervised or evaluated these employees. Therefore, Bermúdez' gender discrimination claim is bound together by speculation and conjecture. As such, it fails. *Macone v. Town of*

*Wakefield,* 277 F.3d 1, 5 (1st Cir.2002) (plaintiffs "are entitled to all inferences which are fairly supported by the evidence, but are not permitted to build their case on mere opprobrious epithets of malice or the gossamer threads of whimsy, speculation and conjecture").[11] Equally unavailing is the fact that none of these instances can be linked to discriminatory animus in Kelly's decision to terminate Bermúdez.

■ In turn, plaintiffs' age discrimination claim centers on Ortíz' purported remarks that the information Bermúdez provided was "obsolete," that she sometimes used "old techniques and procedures," and that "old women were always complaining." The court notes that, save Ortíz' general comment that "old women were always complaining," the other two comments refer to Bermúdez' perceived use of old or obsolete techniques. This tends to bolster the notion of Ortíz' growing frustration regarding Bermúdez' performance. The comments are nothing more than stray remarks insufficient to defeat summary judgment. The First Circuit has long held that "'stray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." *González v. El Día, Inc.,* 304 F.3d 63, 69 (1st Cir.2002); *see also Straughn v. Delta Air Lines, Inc.,* 250

11. *See also Hoeppner v. Crotched Mountain Rehab. Ctr., Inc.,* 31 F.3d 9, 14 (1st Cir.1994) ("Even in discriminatory discharge cases, where the plaintiff can rarely present direct, subjective evidence of an employer's actual motive, the plaintiff cannot survive summary judgment with 'unsupported allegations and speculations', but rather must 'point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony—giving rise to an infer-

ence of discriminatory animus.'") (quoting *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 895 (1st Cir.1988)); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (explaining that in discrimination cases, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the discrimination claim).

F.3d 23, 36 (1st Cir.2001).[12]   Even if the court were to regard these as ageist remarks, Bermúdez provides no account as to the timing of these comments, critical to the pretext analysis, nor does she show how discriminatory animus could be linked to Kelly's decision. *Laurin v. Providence Hosp.*, 150 F.3d 52, 58 (1st Cir.1998) (stray remarks, including "statements by decisionmakers unrelated to the decisional process itself normally are insufficient to establish discriminatory animus") (citations omitted).

As highlighted above, the instances in which Bermúdez alleges to have been subject to age or gender discrimination hold no temporal relation to Bermúdez' termination. *Rivera–Aponte v. Restaurant Metropol # 3, Inc.*, 338 F.3d 9, 12 (1st Cir. 2003) ("The lack of a direct connection between the words and the employment action significantly weakens their probative value.") (citation omitted); *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 301 (1st Cir.1998) ("Yet even if remarks are relevant for the pretext inquiry, their probativeness is circumscribed if they were made in a situation temporally remote from the date of the employment decision.")  The remarks are simply insufficient to cast doubt upon Kelly's reasons for terminating Bermúdez, nor do they suffice to infer that the real reason for her

termination was age or gender discrimination.  "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; [s]he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age [or gender] discrimination.' "  *Meléndez v. Autogermana, Inc.*, 622 F.3d at 52 (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 824 (1st Cir.1991)).

Bermúdez has not evinced that Kelly's job expectations were unlawful or pretextual.  Further, the record holds no evidence from which to draw that Kelly's proffered reasons for eliminating the Kelly Direct Division and terminating her due to her performance flaws were not the real reasons.   Despite plaintiffs' challenges, they have not met their burden of proving pretext to hide either age or gender discrimination, nor have they established that gender and/or age performed a role in Kelly's decision to terminate her.   Thus, Bermúdez' Title VII and ADEA claims fail.[13]

### D.   Retaliation

Plaintiffs also assert that Kelly unlawfully retaliated against Bermúdez, in violation

---

**12.** Notwithstanding, the First Circuit has made clear that remarks "that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus." *Patten v. Wal–Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir.2002); *see Ríos–Jiménez v. Principi*, 520 F.3d 31, 40 (1st Cir.2008).   In addition, despite the fact that all of Bermúdez' discriminatory gripes are circumscribed to Ortíz' actions, the uncontested facts hold that Ortíz was not the sole decisionmaker in Bermúdez' termination.   Méndez and Román, both females older than plaintiff, were also decisionmakers.

**13.** For the reasons already summarized above, Bermúdez' hostile work environment contentions (Ortíz' comments, his monitoring if she reported to the home office as instructed, and criticizing her performance on a presentation she gave) simply do not rise to the level of severity and pervasiveness required to alter the terms and conditions of employment and create an abusive environment. *See Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 56 (1st Cir.2000)(three age-related comments found insufficient).   Consequently, Bermúdez' hostile work environment claims also fail.

of Title VII and ADEA.[14] **ECF No. 1.** Kelly avers that plaintiffs' retaliation claim fails since they are unable to prove a *prima facie* case of retaliation. **ECF No. 17–2 at 21–22.** The court agrees with defendant.

■ To prove a *prima facie* case of Title VII or ADEA retaliation, a plaintiff must show that (i) she engaged in protected conduct, (ii) she was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action. *Ramírez Rodríguez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67, 84 (1st Cir.2005)(ADEA); *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 181 (1st Cir.2008)(Title VII); *see also Hernández–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 46–47 (1st Cir.1998). "For a retaliation claim to survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." *Thompson v. Coca–Cola Co.*, 522 F.3d at 181. Bermúdez' retaliation claim suffers the same fate as her other claims since Bermúdez admitted that she did not present any verbal or written complaints against Ortíz during her tenure at Kelly. In addition, she has not established that she partook in any other form of protected conduct. Therefore, she is unable to meet the first prong of the test. Therefore, we need not go further.[15]

### E. Supplemental Jurisdiction

Since the federal claims have been dismissed, and no other grounds for jurisdiction exists, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (stating "if the federal claims are dismissed before trial, . . . the state law claims should be dismissed as well."). Accordingly, plaintiffs' claims brought pursuant to Commonwealth law are **DISMISSED WITHOUT PREJUDICE.**

### IV. Conclusion

Based upon the foregoing, defendant's motion for summary judgment (**ECF No. 17**) is **GRANTED.** Plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE.** Their Commonwealth of Puerto Rico law claims are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**

---

**14.** Title VII establishes that it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . ., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Similarly, ADEA makes it "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

**15.** Even if plaintiffs had met the first prong, "[t]he issue is whether a reasonable fact finder could find an adequate causal link between these events." *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 85 (1st Cir.2006). None are found here.